Kenneth Allen McDUFF, Appellant,

v.

The STATE of Texas, Appellee.

No. 71872.

Court of Criminal Appeals of Texas, En Banc.

Jan. 22, 1997.

Rehearing Denied Feb. 26, 1997.

Bill Barbisch, Austin, for appellant.

Phillip A. Nelson, Jr., Asst. Dist. Atty., Matthew Paul, State's Atty., Austin, for the State.

## OPINION

OVERSTREET, Judge.

A Travis County grand jury indictment accused appellant of committing capital murder, specifically intentionally causing death in the course of committing and attempting to commit aggravated sexual assault and aggravated kidnapping, alleged to have occurred on or about the 29th day of December, 1991. After a change of venue, resulting in the trial being conducted in Guadalupe County, on February 23, 1994 appellant was convicted in a trial by jury of capital murder. Thereafter on March 1, 1994, based upon the jury's answers to the special issues of Article 37.071, V.A.C.C.P., appellant was sentenced

to death.[1] Appellant raises 23 points of error.

## I.

### EVIDENCE SUFFICIENCY

In four points of error, appellant attacks the sufficiency of the evidence to support his conviction. Specifically, point of error number one claims error in overruling his motion for directed verdict. Point number two avers that the evidence is legally insufficient to support his conviction, while point three alleges factual insufficiency. Point number four claims the evidence is insufficient to corroborate accomplice testimony. These points revolve around appellant's claims that the State has not demonstrated: the corpus delicti of murder, his connection with such a crime, nor the corpus delicti of aggravated kidnapping or aggravated sexual assault.

### A. TRIAL TESTIMONY

At trial, an accomplice witness testified as to appellant in late December of 1991 abducting the complainant from an Austin car wash and forcing her into the car that he and the accomplice were riding around in. The accomplice testified in some detail about appellant sexually assaulting the complainant in the backseat while the car was being driven and again on the hood of the car when they stopped the car. He testified that this even included burning her with a lit cigarette several times. The accomplice even admitted to switching places with appellant and sexually assaulting her himself. The accomplice also testified that after they had stopped and gotten out, with appellant continuing his sexual assault, appellant slapped the complainant real hard and said something about killing her, and that after the slap she fell back and bounced on the ground; whereafter appellant picked her up and put her in the trunk of the car. The accomplice thought that the complainant was moaning, but when she was placed in the trunk and the lid closed she did not make any noise. He indicated that the slap sounded something like a crack,

a tree limb or something breaking, but did not think that it broke her neck. The accomplice testified that he was then dropped off at his house and never saw the complainant again. He also testified that on the way to being dropped off appellant asked for a pocketknife and shovel and said that "he was going to use her up."

Four witnesses testified about hearing a woman's scream followed by the sound of a car door or trunk slamming coming from the same Austin car wash mentioned above on the night of December 29, 1991, and that a car then drove out of the car wash onto a one-way street the wrong way. Some of those witnesses had previously seen that same car in that same area with two men inside a few minutes earlier that night driving the wrong way on another nearby one-way street. One of the witnesses identified appellant as the driver of that car leaving the car wash. The complainant's unoccupied soap-sudded car was then found at the otherwise deserted car wash with her keys and purse and some perishable groceries inside.

The complainant's boyfriend testified that on the night of December 29, 1991, he spoke with her on the phone and she said that she wanted to go wash her car that night. Her sister testified that since that night, there had been no activity in the complainant's bank and charge accounts that could be attributed to the complainant. The sister also indicated that there was no indication from the items remaining in her apartment that she was going on a trip. She was unaware of any problems that the complainant might have been going through that would possibly cause her to disappear or just walk off and leave everything.

A Department of Public Safety (DPS) serologist testified that appellant's car, which he had been seen pushing into and leaving in a Waco motel parking lot on March 1, 1992, and some items therein were found to contain small amounts of human blood. There was also testimony from a DPS criminologist that five hairs recovered from appellant's car matched up microscopically to the known

---

1. The indictment also charged appellant with aggravated sexual assault and aggravated kidnapping. The jury found him guilty of both

offenses and sentenced him to life imprisonment for each.

hair of the complainant, i.e. each of the five hairs had the same microscopic characteristics as the hair that was known to be the complainant's.

A minister/supervisor for a Kansas City, Missouri rescue mission shelter for homeless men testified that appellant had checked into the shelter on March 17, 1992 using an alias name. There was testimony that appellant was arrested on May 4, 1992 in Kansas City, Missouri as he was working using an alias name with alias identification.

## B. ACCOMPLICE WITNESS INSUFFICIENCY CLAIM

■ Point of error number four avers that "the evidence is insufficient to corroborate accomplice testimony." Article 38.14, V.A.C.C.P., provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." The test for sufficient corroboration is to eliminate from consideration the accomplice testimony and then examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense. *Burks v. State,* 876 S.W.2d 877, 887 (Tex.Cr.App. 1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995). In order to determine whether the accomplice witness testimony is corroborated, we eliminate all accomplice evidence and determine whether the other inculpatory facts and circumstances in evidence tend to connect appellant to the offense. *Munoz v. State,* 853 S.W.2d 558, 559 (Tex.Cr.App.1993). We shall accordingly eliminate the accomplice witness testimony from our consideration and then conduct such an examination without considering the accomplice witness testimony.

Appellant points to the lack of non-accomplice eyewitness testimony to the alleged killing, *and the absence of a body or definite cause of death.* He insists that absent the accomplice testimony, there is no evidence of the complainant's death, "except that she was abducted and has not returned." He also points out that hearsay from an accomplice cannot corroborate the accomplice's trial testimony, i.e. an accomplice cannot corroborate himself by his own statements made to third persons. *Reynolds v. State,* 489 S.W.2d 866, 872 (Tex.Cr.App.1972); *Brown v. State,* 167 Tex.Crim. 352, 320 S.W.2d 845 (1959); and *see also Beathard v. State,* 767 S.W.2d 423, 429 (Tex.Cr.App.1989).

■ As noted above, there was trial testimony from a nonaccomplice witness that on the evening of December 29, 1991 appellant was seen driving a car out of the car wash shortly after a woman's scream and the sound of a car door or trunk slamming had been heard coming from the car wash. Nonaccomplice witnesses also testified that shortly thereafter the complainant's unoccupied soap-sudded car was found abandoned at the otherwise deserted car wash with her keys and purse and some perishable groceries inside. Non-accomplice testimony also indicated that the same car that appellant was identified as driving out of the car wash after the scream and door or trunk slam had been seen, occupied by two men, driving around in the neighborhood shortly before the incident at the car wash.

Motel employees testified about appellant pushing his car into the motel parking lot and that it was left there. A DPS criminologist testified that five hairs recovered from appellant's car matched up microscopically to the known hair of the complainant, i.e. each of the five hairs had the same microscopic characteristics as the hair that was known to be the complainant's. One of those hairs was recovered from the carpet in the trunk, while the others were recovered from the backseat area and a back floorboard mat. Also several items found inside appellant's car, including carpeting on the back floor area, a cowboy hat, bed sheets, and a shirt, were found to contain small amounts of human blood; however, based upon the blood the complainant could not be included nor excluded from having been in the car.

One of the accomplice's sisters, with whom the accomplice had been staying in 1991, testified that on an evening between Christmas and New Year's Eve of 1991, a car that

appeared to be appellant's pulled up at her home in Belton and that the accomplice left with the explanation that he and appellant were going to have a couple of drinks. She further testified that the accomplice returned home after midnight that night but she could not describe the vehicle that dropped him off there. An acquaintance of appellant's testified about them riding around Austin on Christmas Day of 1991 looking for a particular prostitute, whereupon appellant suggested just taking a young girl who was outside roller-skating.

 The non-accomplice evidence does not have to directly link appellant to the crime, nor does it alone have to establish his guilt beyond a reasonable doubt; but rather, the non-accomplice evidence merely has to tend to connect appellant to the offense. *Burks v. State*, 876 S.W.2d at 888. Thus there must simply be *some* non-accomplice evidence which *tends* to connect appellant to the commission of the offense alleged in the indictment. *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Cr.App.1994). The accomplice witness testimony in a capital murder case does not require corroboration concerning the elements of the aggravating offense, i.e. the elements which distinguish murder from capital murder. *Gosch v. State*, 829 S.W.2d 775, 777 n. 2 (Tex.Cr.App.1991), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993); *May v. State*, 738 S.W.2d 261, 266 (Tex.Cr.App.1987), *cert. denied*, 484 U.S. 1079, 108 S.Ct. 1059, 98 L.Ed.2d 1020 (1988); *Anderson v. State*, 717 S.W.2d 622, 631 (Tex. Cr.App.1986), *cert. dismissed*, 496 U.S. 944, 110 S.Ct. 3232, 110 L.Ed.2d 678 (1990); *Romero v. State*, 716 S.W.2d 519, 520 (Tex. Cr.App.1986), *cert. denied*, 479 U.S. 1070, 107 S.Ct. 963, 93 L.Ed.2d 1011 (1987). Evidence that the defendant was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence. *Cockrum v. State*, 758 S.W.2d 577, 581 (Tex. Cr.App.1988), *cert. denied*, 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989); and *Burks v. State*, 876 S.W.2d at 887–88.

After eliminating the accomplice witness testimony from our consideration and conducting an examination of the non-accomplice evidence, we conclude that such non-accomplice evidence does indeed tend to connect appellant to the offense sufficiently to corroborate the testimony of the accomplice witness. Accordingly, we overrule point four.

## C. GENERAL INSUFFICIENCY CLAIMS

 Point of error number three avers that "the evidence is factually insufficient to support appellant's conviction." Appellant generally discusses the evidence for points one through four together in his brief, but does not propose a standard of reviewing factual sufficiency in a capital case or specifically argue how the evidence is insufficient under any standard of reviewing factual sufficiency. *See, e.g., Clewis v. State*, 922 S.W.2d 126 (Tex.Cr.App.1996); *White v. State*, 890 S.W.2d 131 (Tex.App.—Texarkana 1994, pet. pending); *Stone v. State*, 823 S.W.2d 375 (Tex.App.—Austin 1992, pet. ref'd, untimely filed). He simply begins his discussion of points one through four by stating, "In reviewing for factual sufficiency the court considers whether the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust[,]" and concludes by stating, "In the alternative, appellant asserts that his conviction is against the great weight and preponderance of the evidence and that his conviction should be reversed and a new trial ordered." We conclude that point number three is insufficiently briefed, presents nothing for review. Tex.R.App.Pro. 74(f) and 210(b). Also, after reviewing the evidence under the *Clewis* standard, we conclude that the verdict is not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Point three is hereby overruled.

Point number one claims error in overruling his motion for directed verdict, while point two alleges that the evidence is legally insufficient to support his conviction. Since a complaint about overruling a motion for directed/instructed verdict is in actuality an attack upon the sufficiency of evidence to sustain the conviction, we shall address and dispose of points one and two together. *Cook v. State*, 858 S.W.2d 467, 469–70 (Tex. Cr.App.1993).

Appellant insists that there are no prosecutions for murder in the absence of 1) a body or remains, 2) a confession, and/or 3) non-accomplice testimony of death and cause of death; i.e. where there is no body, no confession, and no non-accomplice testimony of the death and cause of death, there is a failure of proof of the corpus delicti of homicide. He also insists that the State has failed to show the corpus delicti of either murder, aggravated kidnapping, or aggravated sexual assault.

▮ The corpus delicti of a crime simply consists of the fact that the crime in question has been committed by someone; specifically, the corpus delicti of murder is established if the evidence shows the death of a human being caused by the criminal act of another, and the State is not required to produce and identify the body or remains of the decedent. *Fisher v. State,* 851 S.W.2d 298, 303 (Tex.Cr. App.1993). Thus, in the instant cause, the State must show the death of the named complainant caused by the criminal act of appellant.

▮ Appellant insists that in the absence of a body or remains or a confession, such mandatory showing of corpus delicti must be made via non-accomplice testimony of death and cause of death. He opines that since there is no body to autopsy, a definitive determination of death and cause of death is not possible. He also suggests that if accomplice testimony can be utilized to establish the cause of death, such must be corroborated, though he acknowledges that the standard for corroboration of accomplice testimony to prove corpus delicti is unknown.

▮ We do not find appellant's assertions persuasive. We see no reason to exclude accomplice witness testimony in determining whether the corpus delicti has been established. Appellant is unable to cite any constitutional, statutory, or caselaw requirement that accomplice witness testimony be corroborated before it can be considered in determining whether the corpus delicti has been established, thus we decline to require

such corroboration in making such a determination. Accordingly, in resolving appellant's points of error claiming legal insufficiency of evidence to prove corpus delicti, we shall consider all of the evidence, including accomplice witness testimony. We note that in evaluating the legal sufficiency of evidence of guilt, we must consider *all* of the evidence. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). This includes the accomplice witness testimony. In making such evaluation, we must view *all* of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* Accordingly, we evaluate appellant's legal insufficiency claims in view of *all* of the evidence in such requisite light.

▮ The indictment in the instant cause included a count alleging capital murder via murder in the course of committing and attempting to commit aggravated sexual assault and aggravated kidnapping. The jury charge authorized conviction of capital murder if it found that appellant intentionally caused the death of the complainant in the course of committing or attempting to commit aggravated sexual assault or aggravated kidnapping.[2] The jury returned a general verdict of "guilty of the offense of capital murder." When a general verdict is returned and the evidence is sufficient to support a finding of guilt under any of the paragraph allegations submitted, the verdict will be upheld. *Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Cr.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993); *Fuller v. State,* 827 S.W.2d 919, 931 (Tex.Cr.App.1992), *cert. denied,* 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993). Thus if the evidence is sufficient to support the allegation of murder during the course of aggravated kidnapping, then the guilty verdict shall be upheld.

**2.** Although the indictment alleged the differing methods of committing capital murder in the conjunctive, i.e. in the course of aggravated sexual assault and aggravated kidnapping, it is prop-

er for the jury to be charged in the disjunctive. *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex.Cr. App.1991), *cert. denied,* 504 U.S. 958, 112 S.Ct. 2309, 119 L.Ed.2d 230 (1992).

As discussed above, the corpus delicti of a crime simply consists of the fact that the crime in question has been committed by someone; specifically, the corpus delicti of murder is established if the evidence shows the death of a human being caused by the criminal act of another. As also discussed above, the accomplice witness testified about being present in late December of 1991 when appellant forcibly abducted the complainant from an Austin car wash, and then sexually assaulted her, while the complainant's unoccupied soap-sudded car was found abandoned at the otherwise deserted car wash with her keys and purse and some perishable groceries inside shortly after witnesses testified that they had heard a woman's scream and a car door or trunk slamming sound coming from the car wash and a witness had seen a man, subsequently identified as appellant, driving out of the car wash. Viewing the evidence in the requisite favorable light, we conclude that such establishes the corpus delicti of aggravated kidnapping. V.T.C.A. Penal Code, § 20.04. We also note that the jury charge, pursuant to the indictment and V.T.C.A. Penal Code, § 19.03(a)(2), authorized conviction of capital murder for murder in the course of committing "or attempting to commit" aggravated kidnapping.

As discussed above, the corpus delicti of murder is established if the evidence shows the death of a human being caused by the criminal act of another, and the State is not required to produce and identify the body or remains of the decedent. The accomplice witness testified as to appellant striking the complainant with such force that it bounced her on the ground and sounded something like a crack, a tree limb or something breaking, and placed her limp body in the trunk of his car; and that after striking that blow appellant burned her two or three times with a cigarette but got no response other than perhaps moaning. He also indicated that appellant mentioned killing her and using her up, and asked for a pocketknife and shovel. Another witness testified that while riding around appellant had pointed out places, like around a bridge or tree or gully or oil well, that would be good to bury somebody or dump a body or get rid of somebody, though it was understood that he was referring to getting revenge against a guy who had killed appellant's brother some years before.

The accomplice witness testified as to the difference in stature between appellant, at over six-feet tall, and the complainant, appearing to be a good foot shorter. An exhibit admitted into evidence, a flier announcing the complainant's disappearance, described her as five-foot three-inches tall and weighing one-hundred fifteen pounds. A forensic pathologist testified that a blow from the hand of a person of some size delivered to the head of a person five-foot three-inches tall and weighing one-hundred fifteen pounds which sounded like a tree limb breaking, which resulted in the recipient of the blow being knocked back and bouncing off the ground and being carried limp with legs and feet dangling, indicates that something major has broken with the limpness indicating that there was probably spinal cord damage as well; and not appropriately responding to cigarette burns thereafter further indicates neurological pathway damage without possible recovery such that life is going to be lost very quickly.

As discussed earlier, the complainant's sister indicated that since the complainant had disappeared, she had not seen or heard from the complainant and there had been no activity in her bank and charge accounts that could be attributed to the her, nor was there any indication from the items remaining in her apartment that she was going on a trip. The sister was unaware of any problems that the complainant might have been going through that would possibly cause her to disappear or just walk off and leave everything. The sister also indicated that she and the complainant tried to talk on the phone once or twice a week or at least leave messages on each other's answering machines.

Viewing this evidence and the previously discussed evidence of blood and hairs found in appellant's car in the requisite light, we conclude that there is sufficient evidence of the corpus delicti of murder, i.e. evidence showing the death of a human being caused by the criminal act of another. We conclude that a rational trier of fact could have found

the essential elements of the crime beyond a reasonable doubt. Accordingly, points one and two are overruled.

## II. EVIDENCE ADMISSIBILITY

### A. SEARCH AND SEIZURE

Points ten, eleven and twelve claim error in failing to suppress evidence seized in three separate searches of appellant's car. These items included personal papers bearing appellant's name, a wallet, hairs, clothing, and bloody spots on the car's carpeting. Point ten refers to the March 12, 1992 search; point eleven refers to the April 2, 1992 search; and point twelve refers to the May 19, 1992 search. Appellant unsuccessfully sought to suppress various items seized from his car during the three searches; his pretrial suppression motions were overruled.

 The State suggests that appellant had abandoned the car and forsaken any reasonable expectation of privacy therein. Appellant claims that since this abandonment argument was not made by the State in the trial court, such should not now be heard. However, a reviewing court "may properly sustain the trial court's denial on the ground that the evidence failed to establish standing as a matter of law, even though the record does not reflect that the issue was ever considered by the parties or the trial court." *Wilson v. State,* 692 S.W.2d 661, 671 (Tex.Cr. App.1984) (op. on reh'g). There is a lack of standing to contest the reasonableness of the search of abandoned property.

At the pretrial hearing, there was testimony that motel employees had first noticed the car in the early morning hours of March 1, 1992 and subsequently contacted the sheriff's department wanting it removed because it was partially blocking their truck parking area—it was parked out in the middle of the lot. At police direction, it was towed from the motel parking lot on March 6, 1992. Thus it had been there unattended for 6 days. An affidavit supporting the April 2 search warrant, which was offered and admitted into evidence for purposes of the hearing, indicated that appellant had been positively identified as the man seen using another car in pushing this car into the park-

ing lot of the motel during the early morning hours of March 1, 1992, and that as a result of the car being left there for several days and no one moving it, the motel owners wanted it moved off the property.

 Abandonment of property occurs if the defendant intended to abandon the property and his decision to abandon it was not due to police misconduct. *Brimage v. State,* 918 S.W.2d 466, 507 (Tex.Cr.App.1996), *cert. filed,* May 29, 1996; *Comer v. State,* 754 S.W.2d 656, 659 (Tex.Cr.App.1986). When police take possession of property abandoned independent of police misconduct there is no seizure under the Fourth Amendment. *Hawkins v. State,* 758 S.W.2d 255, 257 (Tex. Cr.App.1988); *Clapp v. State,* 639 S.W.2d 949, 953 (Tex.Cr.App.1982). This Court has spoken approvingly of language in *U.S. v. Colbert,* 474 F.2d 174 (5th Cir.1973) (en banc), which discussed how abandonment is primarily a question of intent to be inferred from words spoken, acts done, and other objective facts and relevant circumstances, with the issue not being in the strict property-right sense, but rather whether the accused had voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search. *Sullivan v. State,* 564 S.W.2d 698 (Tex.Cr.App.1978) (op. on reh'g); *Smith v. State,* 530 S.W.2d 827, 833 (Tex.Cr.App.1975).

Appellant pushed the car into the motel parking lot. There is no evidence that there was any police involvement at all in his doing so. Thus we must determine whether appellant's pushing the car there and leaving it for several days evidences an intent to abandon it.

We note that TEX.REV.CIV.STAT.ANN. art. 4477–9a, § 5.01(2) (Vernon Supp.1992), *repealed* effective September 1, 1995, and *replaced by* V.A.T.C. Transp. Code, § 683.002, defines "Abandoned motor vehicle" to include "a motor vehicle that has remained on private property without the consent of the owner or person in control of the property for more than 48 hours[.]" Such definition applies specifically to the

Texas Abandoned Motor Vehicles Act and is thus not dispositive on general search and seizure issues, but can be instructive in our determination of appellant's intent in leaving his car.

As discussed above, appellant had left the car in the motel parking lot for several days, apparently voluntarily and without any police involvement. Leaving it for six days, nearly a week from March 1 through March 6, is some evidence of intent to not retrieve the car. Also appellant driving another car to push this car into the parking lot is some indicia that appellant had possession of another operable vehicle. The affidavit supporting the May 18 search warrant indicated that appellant did not return to his school classes on March 2, 1992 and was subsequently found living under alias names in Kansas City, Missouri on May 4, 1992. The Abandoned Motor Vehicles Act includes provisions for police to take an abandoned vehicle into custody, and for police department use and auction of such vehicles. Such statutory potential disposition of a vehicle contemplates possible loss of possession and ownership and concomitant privacy interests.

We point out that leaving a car unattended such as to be included within the Art. 4477–9a, § 5.01(2) definition does not automatically mean "abandonment" in terms of a Fourth Amendment privacy interest. Each situation must be analyzed and evaluated on a case-by-case basis, with the particular facts of each situation determinative. In the instant case, we conclude that there is sufficient evidence of abandonment, i.e. that appellant intended to abandon the car and his decision to abandon it was not due to police misconduct. Accordingly, the trial court did not err in denying appellant's motions to suppress the evidence obtained from the car. Accordingly, we overrule points ten, eleven and twelve.

## B. EVIDENCE EXCLUSION

Point number thirteen alleges that "the trial court erred in barring defense counsel from cross[-]examining the accomplice witness on his knowledge of the 35 year mandatory minimum sentence applicable to life for capital murder." Appellant insists that the accomplice's knowledge of the mandatory minimum sentence that he would have to serve on a life sentence for aggravated kidnapping, 15 years, as opposed to the mandatory minimum on a life sentence for capital murder, 35 years, was necessary in order to inquire into his incentive to testify favorably for the State against appellant.

While exposing a witness's motivation to testify against a defendant is a proper and important function of the constitutionally protected right to cross-examination, and the defendant is allowed great latitude to show any fact which would tend to establish ill feeling, bias, motive, and animus on the part of the witness testifying against him, this right does not prevent a trial court from imposing some limits on the cross-examination into the bias of a witness. *Miller v. State*, 741 S.W.2d 382, 389 (Tex.Cr.App. 1987), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2835, 100 L.Ed.2d 935 (1988). Of course, within reason, the trial judge should allow the accused great latitude to show any relevant fact that might affect the witness's credibility. *Virts v. State*, 739 S.W.2d 25, 29 (Tex.Cr.App.1987).

Appellant sought to question the accomplice witness about his knowledge of the difference between the parole eligibility time period on a life sentence for one convicted of capital murder versus one convicted of aggravated kidnapping or aggravated robbery; however he made no showing that that witness had been convicted of, or made a plea agreement for conviction of, any offense. Appellant also failed to show that the accomplice witness had made any type of plea agreement for any sentence, life or otherwise. Appellant was permitted to question him about any possible agreements, and the accomplice witness insisted that no one had made any offers to him and that there were no agreements or deals for his testimony, other than testimonial immunity, i.e. that his testimony in appellant's trial could not be used against the accomplice witness in his own trial.

The parameters of cross-examination for a showing of witness bias rests within the sound discretion of the trial court. *Chambers v. State*, 866 S.W.2d 9, 27 (Tex.Cr.

App.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1871, 128 L.Ed.2d 491 (1994). In *Carroll v. State,* 916 S.W.2d 494 (Tex.Cr.App. 1996), we held that a trial court erred in precluding a defendant's cross-examination inquiring into a witness's incarceration, pending charge, and possible punishment as a habitual criminal, because such cross-examination was appropriate to demonstrate the witness's potential motive, bias or interest to testify for the State, and to show that the witness had a vulnerable relationship with the State at the time of his testimony.

In this case, as noted above, appellant was permitted to question the accomplice witness about any possible agreements, and the accomplice witness insisted that no one had made any offers to him and that there were no agreements or deals for his testimony, other than testimonial immunity. Thus, appellant was permitted to demonstrate the accomplice's vulnerable relationship with the State and potential motive, bias or interest. Therefore appellant was able to show that since the accomplice witness had the serious pending charges, he was at least potentially beholden to some extent to the State for the disposition of those charges and that such situation might have affected his testimony as a witness for the State. Allowing him to elicit the accomplice witness's knowledge or lack of knowledge of the difference in parole eligibility minimum time periods would not have any further shown his vulnerable relationship with the State or his potential motive, bias or interest.

In the instant case, based upon the cross-examination that was allowed, we conclude that the trial court did not abuse its discretion in denying appellant's proffered evidence about the accomplice witness's knowledge of the time of parole eligibility on life sentences. Accordingly, we overrule point number thirteen.

## C. EVIDENCE ADMISSION

Points five and six aver error in allowing certain testimony of witnesses Pierce and Smith over objections that such testimony was irrelevant on an issue other than character conformity and that the testimony was more prejudicial than probative. Point five

deals with Pierce's testimony about appellant suggesting that they take a young 12 or 13-year old girl who was outside roller-skating, while point six involves Smith's testimony about appellant pointing out places that would be good to bury somebody or dump a body or get rid of somebody.

Appellant insists that such testimony from these two witnesses was inadmissible character conformity evidence as being outside the scope of Tex.R.Crim.Evid. 404(b) and is more prejudicial than probative in contravention of Tex.R.Crim.Evid. 403. The State points out that it had a compelling need to meet its legal burden of corroboration of the accomplice witness's testimony. Rule 404(b) explicitly precludes admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he acted in conformity therewith; however, it does allow for the admission of such evidence for other purposes.

After opening statements, outside the presence of the jury the trial court announced it was having "a hearing on the motion in limine." Four witnesses testified, including Pierce and Smith. Appellant made his objections to the various witnesses and the trial court overruled the objections. One of the prosecutors had even commented, "We kind of ran through several of the motions in limine." Then in the presence of the jury, when witnesses Pierce and Smith testified, appellant failed to object to their testimony.

█ It is well-settled that the denial of a motion in limine is not sufficient to preserve error for review, but rather there must be a proper objection to the proffered evidence. *Basham v. State,* 608 S.W.2d 677, 679 (Tex. Cr.App.1980); *Romo v. State,* 577 S.W.2d 251 (Tex.Cr.App.1979). Thus, appellant by failing to object to the proffered testimony of Pierce and Smith failed to preserve his claims for review. Accordingly, we overrule points five and six.

█ Points seven, eight, eight-A, and nine allege error in admitting, over objection, hearsay testimony from four witnesses regarding statements that the accomplice had made to them. Point seven, refers to testimony of witness Dupuis; point eight refers

to testimony of witness Mr. Bedrich; and point eight-A refers to testimony of witness Mrs. Bedrich. At a New Year's Eve 1991 party, these three witnesses testified that the accomplice had made a statement to them wondering what they would do if they saw someone being mistreated but couldn't do anything about it. He also complains about testimony from Mr. Bedrich about the accomplice having asked about whether he had heard about the woman missing from the Austin car wash and saying that appellant had done it, but that he was afraid to tell anybody for fear of being killed, and that there were noises coming from the trunk of a car that were inconsistent with a new car. Point nine deals with testimony from Officer Steglich as to the accomplice having told him about having been with appellant when he took the girl from the car wash, spent time with appellant in a secluded area, and appellant having dropped him off at his trailer park.

 The objected-to testimony was elicited after the accomplice witness had testified. The State suggests that such was admissible pursuant to Tex.R.Crim.Evid. 801(e)(1)(B) as prior consistent statements. Appellant responds that since such was proffered at trial under the Tex.R.Crim.Evid. 803(24) statement against interest hearsay exception the State should not be allowed to bring forth a new theory for admissibility on appeal. However, it is well-settled that a trial court's decision will be sustained if it is correct on any theory of law applicable to the case, especially with regard to the admission of evidence. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Cr.App.1990).

Rule 801(e)(1)(B) provides that a statement made by a declarant who testifies at trial and is subject to cross-examination concerning the statement is not hearsay if it is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. It also requires that a prior consistent statement be made before the alleged improper influence or motive arose. *Haughton v. State*, 805 S.W.2d 405, 408 (Tex.Cr. App.1990). Appellant's brief and supplements do not argue that the requirements of

Rule 801(e)(1)(B) have not been met. After reviewing the accomplice witness's testimony, we conclude that the above-described complained-of testimony is within the parameters of Rule 801(e)(1)(B). We therefore overrule points seven, eight, eight-A, and nine.

### III.

### PUNISHMENT CLAIMS

Point number fourteen avers error in refusing appellant's request to represent himself at the punishment phase. At the beginning of the punishment phase, prior to the presentation of evidence and the reading of the enhancement allegations, appellant stated that wanted to represent himself at punishment. The stated reason was because of a dispute with trial counsel over strategy in cross-examining and presenting witnesses. After extensive discussions and consideration, the trial court denied appellant's request for self-representation.

 An accused's right to self-representation must be asserted in a timely manner, namely, before the jury is impaneled. *Ex parte Winton*, 837 S.W.2d 134, 135 (Tex. Cr.App.1992); *Blankenship v. State*, 673 S.W.2d 578, 585 (Tex.Cr.App.1984). Since appellant's request was long after the jury had been impaneled, such request was not timely. We therefore overrule point fourteen.

Point fifteen claims error in admitting victim impact evidence at punishment. Upon the State announcing that the complainant's sister would be the next witness for victim impact evidence, outside the presence of the jury it made such a proffer and appellant objected to the introduction of such evidence. The trial court stated that it was going to allow the testimony in, and approved of appellant not having to object again in the presence of the jury if the testimony was substantially the same.

 Before the jury the complainant's sister testified about the effects of this offense on her children and her sisters, including how her recent marriage had broken up shortly after the complainant disappeared. She described how she now had a lot of fears,

especially to go out at night alone. She also described what she missed most about the complainant—not being able to talk to her, and her acceptance and love. She also stated that it was very important to her and her family to get the complainant's remains back and to have a proper funeral and bury her in sacred ground on their family plot.

We have recently discussed the admissibility of so-called "victim impact" evidence. *Ford v. State*, 919 S.W.2d 107, 112–16 (Tex.Cr.App.1996); *Smith v. State*, 919 S.W.2d 96, 97–103 (Tex.Cr.App.1996), *cert. filed*, July 9, 1996. Admissibility is determined by the terms of the Rules of Criminal Evidence, particularly whether such evidence is relevant to the statutory special issues. Such questions of relevance should be left largely to the trial court, to be reviewed under an abuse of discretion standard. *Ford, supra.*

The jury was required to answer a punishment special issue which asked about appellant's moral culpability. Committing a murder and disposing of the body such that it is not located and thus depriving the surviving family of the ability to bury the decedent certainly seems to be a factor in assessing one's moral culpability. Also, the effects of a murder causing the decedent's sister to have fears, particularly going out at night alone, would also appear to be a legitimate factor in assessing one's moral culpability. These effects arising from such a murder are certainly foreseeable and to commit such a murder in disregard of these effects on survivors seems to go to the perpetrator's moral culpability for such acts. The other testimony, regarding how the decedent's sister's marriage broke up after the disappearance and missing the decedent's love and not being able to talk to her, seems to be more tenuously tied to appellant's moral culpability. Such seem to be less foreseeable after-effects of such a murder and it is more questionable whether such fall within the parameters of admissible "victim impact" evidence.

We also note that the decedent's sister's testimony in this case did not go to the decedent's character, i.e. the testimony did not attempt to show that appellant was more deathworthy because of who he killed and the character of the decedent. As in *Ford,* we conclude that the trial court was within its discretion in admitting such evidence as relevant to the punishment special issues. Accordingly, we overrule point number fifteen.

Points sixteen, seventeen, and eighteen allege Eighth and Fourteenth Amendment constitutional violations for failure to define "society." Appellant suggests that since the jury charge included an instruction on the fact that a person assessed a life sentence for capital murder would have to serve 35 years before being eligible for parole, in order to be guided in its deliberations on future dangerousness the jury needed to be informed that society includes not only free citizens but also inmates in the penitentiary. He also points out that during deliberations the jury inquired with a note explicitly asking for a definition of society. We have repeatedly held that there was no error in refusing to define such a term. *Burks v. State*, 876 S.W.2d 877, 910–11 (Tex.Cr.App. 1994), *cert. denied*, 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *Camacho v. State*, 864 S.W.2d 524, 536 (Tex.Cr.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1339, 127 L.Ed.2d 687 (1994). We find no cause to depart from our prior holdings. Accordingly points sixteen, seventeen, and eighteen are overruled.

Point twenty avers error in barring evidence of the 35 year mandatory minimum parole eligibility statute. The trial court did include a jury charge instruction stating, "A prisoner serving a life sentence for a capital felony is not eligible for release on parole until the actual calendar time the prisoner has served equals 35 calendar years." Since such constituted precisely the same information via legal instruction rather than testimonial evidence, we find no error in the trial court's decision to exclude the proffered evidence but include the above-quoted instruction. Point twenty is hereby overruled.

In point nineteen appellant complains of the unduly restrictive definition of mitigating evidence in Article 37.071, V.A.C.C.P. He insists that such definition unduly narrows the range of evidence that may be taken into

account in determining whether to assess a life or death sentence. Appellant challenges Art. 37.071, § 2(f)(4)'s provisions that jurors shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness. He insists that such definition limits what may be considered by the jury to evidence that a juror might regard as reducing the defendant's blameworthiness and "excluded from consideration that the defendant will have to serve the balance of his life in prison if given a life sentence." However, as noted by the above-quoted instruction, appellant would have been eligible for parole on a life sentence in 35 years rather than being *required* to serve the balance of his life in prison. Other than this claim, appellant merely states generally that the jury's consideration of mitigating evidence was restricted, but he does not specify what other evidence he presented which was mitigating but the jury was unable to consider. We find appellant's claim unpersuasive. Point nineteen is overruled.

■ Point number twenty-one claims that his conviction and death sentence violate the double jeopardy protections of the U.S. and Texas Constitutions because the facts of the instant case were admitted into evidence as unadjudicated offense evidence at the punishment phase of a previous capital murder trial to secure the death penalty against him. This Court has held that in such a situation the double jeopardy provisions are not implicated and not violated because the previous punishment was for the charged offense rather than the extraneous offense. *Ex parte Broxton*, 888 S.W.2d 23, 28 (Tex.Cr.App. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). Accordingly, point twenty-one is overruled.

■ Point twenty-two asserts that allowing evidence of kidnapping to prove both murder and the aggravating element to raise it to capital murder is an improper use of the capital murder statute. He insists that using evidence of kidnapping twice, once to prove murder and again to show capital murder, i.e. a double use of kidnapping, is an improper

application of the capital murder statute. Appellant does not present any constitutional or statutory authority against murder in the course of committing or attempting to commit kidnapping being "elevated" to capital murder. We find such to be inadequately briefed and overruled point twenty-two. Tex.R.App.Pro. 74(f) and 210(b).

■ Point twenty-three asserts that the use of evidence of kidnapping to prove both murder and the aggravating element raising it to capital murder violates the Eighth Amendment in failing to limit the class of "death eligible" offenders. He acknowledges that the V.T.C.A. Penal Code, § 19.03(a)(2) "in the course of" offenses "perform the necessary function of narrowing those class of murders which can merit a capital conviction and sentence." However, he insists that in the present case murder is proved by evidence of kidnapping and no return, while kidnaping is then proved again to raise the murder to a capital offense, with kidnapping performing no narrowing of the class of death eligible offenses, thus resulting in a violation of the Eighth Amendment of the U.S. Constitution. The Texas capital murder scheme sufficiently narrows the class of death-eligible defendants. *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Appellant's argument that it is not sufficient in his case is not persuasive. Point twenty-three is overruled.

After reviewing and overruling all of appellant's points of error, his conviction and sentence are hereby affirmed.

BAIRD, Judge,* concurring.

I write separately to more fully discuss the sufficiency of the evidence to establish murder in the absence of the victim's body. In points of error one and two, appellant contends the evidence is legally insufficient to prove the *corpus delicti* of the murder since no body was produced and there was neither a confession by appellant nor non-accomplice testimony establishing the death. Appellant further contends that if accomplice witness testimony is utilized to establish *corpus delicti,* it must be corroborated.

---

* This opinion was prepared by Judge Frank Malo- ney prior to his leaving the Court.

## I.

The *corpus delicti* of any crime "simply consists of the fact that the crime in question has been committed by someone." *Fisher v. State,* 851 S.W.2d 298, 303 (Tex.Cr.App.1993). The *corpus* delicti essentially embraces all of the elements of the crime except the participation of the defendant:

> the *corpus delicti* [of a crime] embraces the fact ... that somebody did the required act or omission with the required mental fault, under the required (if any) attendant circumstances, and producing the required (if any) harmful consequence, without embracing the further fact (needed for conviction) that the defendant was the one who did or omitted that act or was otherwise responsible therefor.

*Id.* (quoting 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 1.4 at 24 (2nd ed. 1986)). Proof of the *corpus delicti* may not be made by the defendant's extrajudicial confession alone, but proof of the *corpus delicti* need not be made independent of the extrajudicial confession. If there is some evidence corroborating the confession, the confession may be used to aid in the establishment of the *corpus delicti. Self v. State,* 513 S.W.2d 832, 835 (Tex.Cr.App.1974). On the other hand, a conviction may not be based upon an accomplice witness' testimony unless corroborated by other evidence tending to connect the defendant with the offense committed. Tex.Code Crim.Proc.Ann. art. 38.14.

In the context of murder, the State was previously required to produce and identify a body or remains in order to prove the *corpus delicti.* Article 1204 of the 1925 Penal Code provided:

> No person shall be convicted of any grade of homicide unless the body of the deceased, or portions of it, are found and sufficiently identified to establish the fact of the death of the person charged to have been killed.

This provision can be traced to the first codification of criminal and civil laws of the Republic of Texas, and was founded upon a desire to avoid the swift execution of a potentially innocent person, particularly on the rugged frontier where the alleged deceased might have simply moved on to another place, never to be seen again. *See,* Walter W. Steele, Jr. & Ruth A. Kollman, *The Corpus Delicti of Murder After Repeal of Article 1204,* Voice for the Defense 10, 11 (June 1991) (drafters apparently concluded "that the vicissitudes of life on an enormous frontier required particular safeguards against the conviction and execution of innocent persons" and one of such safeguards was the body requirement). *See also, Puryear v. State,* 28 Tex.App. 73, 11 S.W. 929, 931 (1889) (Texas provision inspired by desire to avoid conviction and punishment of innocent persons, stating "we could cite hundreds of cases in which the innocent have been punished under the old rule, which did not require the body or a portion of it, to be found.").

This view was never adopted by the English common law. *See e.g., Puryear,* 11 S.W. at 931 (a common law conviction for murder could be sustained upon testimony of witness without production of body); Wheeler, *Invitation to Murder,* 30 S. Tex.L.Rev. at 276 (circumstantial evidence sufficient to establish death in common law). And Texas appears to have been the only state to have enacted such a provision. While some states adopted less radical rules, requiring "direct proof" of the *corpus delicti* of death, even those provisions have long been repealed. Wheeler, *Invitation to Murder,* 30 S.Tex. L.Rev. at 276 (Montana, New York, North Dakota identified as having statutes requiring proof of death by direct evidence, but those provisions now repealed).

Article 1204 was repealed by the Texas Legislature with the passage of the 1974 Penal Code. *Fisher,* 851 S.W.2d at 303. While we have referred a number of times to its repeal, we have never purported to know the impetus therefor. *Id., Streetman v. State,* 698 S.W.2d 132, 134–35, n. 1 (Tex.Cr. App.1985); *Easley v. State,* 564 S.W.2d 742, 747 (Tex.Cr.App.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978); *Valore v. State,* 545 S.W.2d 477, 479 n. 1 (Tex.Crim. App.1977). Nevertheless, the demise of article 1204 is consistent with prevailing legal views.

The notion that the careful and meticulous murderer might escape punishment by de-

stroying or forever concealing the body of his victim is a distasteful one:

> The fact that a murderer may successfully dispose of the body of the victim does not entitle him to an acquittal. That is one form of success for which society has no reward.

*Epperly v. Commonwealth,* 224 Va. 214, 294 S.E.2d 882, 891 (1982) (quoting *People v. Manson,* 71 Cal.App.3d 1, 139 Cal.Rptr. 275, 298 (1977), victim's body never found); *see also, State v. Zarinsky,* 143 N.J.Super. 35, 362 A.2d 611, 621 (App.Div.1976) (concealment or destruction of victim's body should not preclude prosecution where proof of guilt can be established beyond reasonable doubt), *aff'd,* 75 N.J. 101, 380 A.2d 685 (1977); *and, People v. Lipsky,* 57 N.Y.2d 560, 457 N.Y.S.2d 451, 456, 443 N.E.2d 925, 930 (1982) (no hesitancy overruling common law rule requiring direct proof of death in murder case as such rule rewards professional or meticulous killer). *See generally,* Wheeler, *Invitation to Murder,* 30 S. Tex.L.Rev. at 278 (axiomatic that society built on respect for law should not grant immunity to killer who through calculation or fortuitous events completely destroys or conceals victim's body). In addition, it is less likely in today's mobile and technological society that a person might vanish and never be heard from again. In a case before the Virginia Supreme Court, a defendant made a similar argument to the one presented by appellant. *Epperly, supra.* Epperly was convicted of first degree murder even though the victim's body was never recovered. Epperly contended that proof of *corpus delicti* is only sufficient if (1) there was an eyewitness to the killing, (2) identifiable remains were found or (3) the accused confesses to the crime. *Epperly,* 294 S.E.2d at 890. The Virginia Supreme Court rejected his argument, expounding upon life in modern society where it is exceedingly rare that a person can vanish of their own volition:

... there is less reason for strictness in the proof of *corpus delicti* now than in earlier times. In Sir Matthew Hale's day,[1] a person might disappear beyond all possibility of communication by going overseas or by embarking in a ship. It would have been most dangerous to infer death merely from his disappearance. Worldwide communication and travel today are so facile that a jury may properly take into account the unlikelihood that an absent person, in view of his health, habits, disposition, and personal relationships would voluntarily flee, "go underground," and remain out of touch with family and friends. The unlikelihood of such a voluntary disappearance is circumstantial evidence entitled to weight equal to that of bloodstains and concealment of evidence.

*Id.*

Finally, dispensing with the body requirement is consistent with the increasingly accepted view that direct and circumstantial evidence are equally valuable. *Id.* (emphasizing that direct and circumstantial evidence are "entitled to the same weight"). *See, Hankins v. State,* 646 S.W.2d 191, 198–199 (Tex.Cr.App.1981) (Op'n on rehearing). The State may prove its case by direct or circumstantial evidence so long as it shoulders its burden of proving all of the elements of the charged offense beyond a reasonable doubt. *See, Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (enunciating single standard of review for assessing sufficiency of evidence). *See also, State v. Lerch,* 63 Or.App. 707, 666 P.2d 840, 849 (1983) (rejecting argument that higher standard applies when circumstantial evidence relied upon to prove *corpus delicti* ), *aff'd,* 296 Or. 377, 677 P.2d 678 (1984); *Geesa v. State,* 820 S.W.2d 154, 156–59 (Tex.Cr.App. 1991) (since circumstantial and direct evidence judged by same standard at trial, should therefore be subject to same standard of review on appeal); *and, State v. Rebeterano,* 681 P.2d 1265, 1267 (Utah 1984) (recog-

---

1. Matthew Hale is often credited with the notion that a body should be produced in order to support a murder conviction. Hale is quoted as writing, "I would never convict any person of murder or manslaughter unless the fact were proved to be done, or at least the body found dead." Steele & Kollman, *The Corpus Delicti of Murder,* Voice at 11; Michael E. Wheeler, *Invitation to Murder?: Corpus Delicti, Texas–Style,* 30 S.Tex.L.Rev. 267, 273 (1989); *Epperly v. Commonwealth,* 224 Va. 214, 294 S.E.2d 882, 890 (1982).

nizing that jurisdictions have uniformly held production of body not necessary to prove murder and death can be established by circumstantial evidence). As one state court explained:

> ... circumstantial evidence, like direct evidence, must indicate guilt to the extent that there is no reasonable doubt of that conclusion. In essence, circumstantial and direct evidence is to be analyzed the same in determining its sufficiency to establish a disputed issue.... It would be inconsistent to require more from circumstantial evidence to establish the *corpus delicti* than is required to establish guilt beyond a reasonable doubt.

*State v. Smith*, 31 Or.App. 321, 570 P.2d 409, 411 (1977). Retention of a body requirement would contradict our holdings that circumstantial evidence and direct evidence are of equal value.

Whatever the reason for the repeal of article 1204, the State is no longer required, in proving murder, to produce a body and identify it as the alleged victim. *Fisher*, 851 S.W.2d at 303. Rather, *corpus delicti* of murder is now shown if the evidence proves (1) the death of a human being; (2) caused by the criminal act of another. *Id.*

## II.

Appellant further contends an accomplice witness' testimony must be corroborated in proving the *corpus delicti*. While a conviction may not be had upon accomplice witness testimony unless corroborated, no such requirement applies to *corpus delicti* (except in cases where the defendant's extrajudicial confession is the only evidence offered to prove *corpus delicti*.). *Self, supra*. Since appellant did not make an extrajudicial confession in this case, there is no need to require corroboration in proving the *corpus*

*delicti*. Appellant was charged with murder committed in the course of aggravated kidnaping or attempted aggravated kidnaping.[2] Tex. Penal Code Ann. § 19.03(a)(2). The State was required to prove that appellant intentionally or knowingly caused the death of the alleged victim in the course of intentionally or knowingly abducting her.[3]

Appellant's accomplice, Hank Worley, testified he was with appellant when they abducted the victim on the evening of December 29, 1991. He testified that following the abduction, appellant tortured and repeatedly sexually assaulted the victim. Worley testified they drove into the country and appellant pulled the victim from the car by her hair and continued to sexually assault her. At one point appellant struck the victim. Worley stated the blow caused the victim to "bounce off the ground" a couple of times, and that she could not brace herself for the fall as her hands were tied behind her back. In describing appellant's blow to the victim, Worley testified that "it sounded like a tree limb or something breaking." Even though appellant burned the victim two or three times thereafter, Worley testified the victim did not protest or scream as she had done when burned by appellant earlier. He stated the victim's body "was limp" and, when picked up by appellant, her feet and legs "were dangling." Appellant put the victim in the trunk. Worley stated the victim did not make any noise while in the trunk. Worley told appellant to let the victim go, but appellant refused. Worley further testified appellant asked him for a pocketknife and a shovel.

Forensic pathologist, Hubbard Fillinger, testified that a single blow to the head can cause death. He further explained:

> ... The kind that you and I are most familiar with is the boxer-type punch to the head where the person sustains a con-

**2.** Appellant was charged in the alternative with murder committed in the course of an aggravated sexual assault. The jury found appellant guilty of capital murder. In a capital murder case where a general verdict is returned, the evidence is sufficient if it supports any of the alternatively submitted theories. *Cook v. State*, 741 S.W.2d 928, 935 (Tex.Cr.App.1987), *judgment vacated and remanded on other grounds*, 488 U.S. 807, 109 S.Ct. 39, 102 L.Ed.2d 19 (1988).

**3.** "Abduct" was defined in the charge as meaning "to restrain a person with intent to prevent her liberation by secreting or holding her in a place where she is not likely to be found." "Restrain" was defined as "restrict[ing] a person's movements without consent, so as to interfere substantially with her liberty, by moving her from one place to another or by confining her."

cussion that is a shaking of the brain causing it to swell very rapidly inside the skull. When it swells, the person loses consciousness extremely rapidly and death can follow in a very short period of time thereafter.

Fillinger also answered a hypothetical question tracking the facts of the instant case:

[Prosecutor]: Doctor Fillinger, hypothetically speaking, if a single blow was made to the head of an individual, from one individual to another with a person of some size and stature standing over a person of approximately five feet, three inches in height and 115 pounds, one blow from hand to—whether it be open or closed fist—to the had of that individual, on that person's knees, 5'3", 115=pound [sic] person, on that person's knees, the other one standing, the blow sounding like a tree limb breaking, like a break, not a pop sound, the description of the individual that was hit having been knocked back and bouncing off the ground a time or two, being carried after that by the head and being described as limp with her legs and feet dangling, could—could that be compatible with life?

[Fillinger]: Well, the description that you give to me suggests, number one, a blow of a great deal of force that makes a cracking or snapping sound. That tells me that something major has broken, in all probability. Either facial bones, neck bone, jawbone or something.... The loud cracking noise, the fact that the person is limp thereafter would be consistent with brain and/or spinal cord damage. The snapping noise would make it more than likely that we have either facial fractures or damage to the jaw or neck, should again, render a person limp, unconscious and probably not responding as it's described the way she was picked up. Hanging limp, that would indicate to me that there's probably spinal cord damage.

As to the victim's failure to respond, or minimal response, to the burning after being struck, Fillinger stated:

... The fact that there is no apparent response or very minimal response after the blow was struck would tell me, number one, that person is not only rendered incapable of perceiving it, but has probably had the nerve tracks in the spine so damaged that they can't even feel it .... if we generate that much pain to a very sensitive part of the anatomy and there's no response, that leads us to believe that the neurological pathways that sent that message up, ouch, are damaged to the point where we don't have any possible recovery. *And that's an indication that life is going to be lost very quickly.*

(Emphasis added.)

Worley testified they abducted the victim from a carwash. Witnesses near the carwash at the time of the abduction heard a woman scream and car doors slam and saw a car matching the description of appellant's car leaving the carwash. The victim's soaped car was found abandoned at the carwash, her keys and purse inside. The victim's apartment was unlocked and there was no evidence she had packed or made arrangements for a trip. The victim never reappeared despite massive efforts on the part of her family and friends to locate her. Her bank accounts and credit cards have remained inactive.

Hair found in the backseat and the trunk of appellant's car had microscopic characteristics similar to hair recovered from the victim's clothing. Worley's sister testified that Worley left with appellant on an evening between Christmas and New Year's, 1991. Another witness testified to driving around Austin with appellant four days before the abduction in this case, looking for a certain prostitute. They stopped to ask a 12 or 13-year–old girl if she knew the woman. According to the witness, as they drove away from the young girl, appellant said, "Why don't we just take her?" Appellant was arrested in Kansas City on May 4, 1992, where he was living under an assumed name.

Reviewing the record evidence in a light most favorable to the verdict, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Worley's testimony as to appellant's forcible abduction of the victim, appellant's beating, sexual assault, and torture of the victim, appellant's statement that he would not re-

lease her and appellant's request for a knife and shovel, together with the victim's sudden and unexplained disappearance established the *corpus delicti* of murder and aggravated kidnaping.[4] The evidence supports the jury's verdict.

With these comments, I join the remainder of the majority opinion.

McCORMICK, P.J., joins this opinion.

MANSFIELD, Judge, concurring.

I join the opinion of the majority but write separately as to the disposition of point of error number fifteen. Appellant avers, in this point of error, the trial court erred in admitting victim impact evidence at the punishment phase. After the trial court overruled appellant's timely objection, the complainant's sister testified as to the effects of the complainant's death on her, her children and her sisters. She testified she was now afraid to go out alone, especially at night, and how much she missed her sister's love and companionship. Finally, she testified it was important to her and her family to have the complainant's remains recovered and buried in the family plot.

In *Smith v. State*, 919 S.W.2d 96 (Tex. Crim.App.1996), a plurality of the Court concluded that testimony by the sister of the victim concerning the victim's good nature, hobbies and work ethic was not relevant to sentencing and, therefore, should not have been admitted. This evidence concerned primarily the character of the victim, not the effect of her death on her family and friends. However, the Court also held that the erroneous admission of such "victim character" evidence in *Smith* was harmless because the evidence:

(1) comprised a relatively miniscule portion of the evidence presented at punishment; and

(2) was not emphasized by the State at closing argument; and

(3) given the overwhelming evidence presented that supported the jury's answers as to the special issues, we concluded the victim impact/character evidence made no contribution to punishment. Tex.R.App.Proc. 81(b)(2).

*Smith, supra,* 919 S.W.2d at 103.

The evidence in the present case is more akin to that which we found admissible in *Ford v. State*, 919 S.W.2d 107 (Tex.Crim.App. 1996). Rather than being evidence of the character of the complainant, the evidence in the present case related to the impact her death has had on her sister and other persons. Such evidence was found by this Court in *Ford* to be arguably relevant to the defendant's moral culpability contained in the mitigation special issue. We concluded the trial court's decision to admit this testimony was not an abuse of discretion in that such testimony was within the zone of reasonable disagreement as to what constituted evidence relevant to sentence. *Id.*

In my opinion, the danger of undue prejudice inherent to a defendant in the introduction of "victim impact" evidence is the same, whether the evidence relates to the victim's character or to the impact his or her death has had on her family and friends.[1] Therefore, I believe the admission of the complainant's sister's testimony in the present case, given *Smith,* was error and should have been subjected to a harm analysis under Tex. R.App.Proc. 81(b)(2). Given the extensive evidence presented at punishment, which overwhelmingly supported the jury's answers as to the special punishment issues, and the fact the State did not emphasize the sister's testimony at closing argument, I conclude beyond a reasonable doubt this evidence made no contribution to punishment and its admission was therefore harmless. *Harris v.*

---

4. Worley's testimony was corroborated by other evidence tending to connect appellant to the crime, such as the testimony of Worley's sister, hair recovered from appellant's car and trunk, and the witnesses who saw appellant's car around the carwash at the time of the abduction. *See,* art. 38.14.

1. In my concurrence in *Smith,* I stated my opinion, citing *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), that victim impact evidence is relevant within the context of the mitigation special issue. Therefore, such evidence should always be admissible, subject to an abuse of discretion standard.

*State,* 790 S.W.2d 568, 587–588 (Tex.Crim. App.1989); *Smith, supra.*

With these comments, I join the opinion of the Court.