NO. 07-05-0088-CR


NO. 07-05-0089-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL D



MAY 10, 2005



______________________________




SHANNON DEWAYNE THOMPSON, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE



_________________________________



FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;



NO. 49,282-B & 49,283-B; HONORABLE JOHN B. BOARD, JUDGE



_______________________________



Before QUINN and REAVIS and CAMPBELL, JJ.

ABATEMENT AND REMAND


 Pending before this Court is a second request for an extension of time in which to
file a reporter's record in which the official court reporter indicates no designation has been
filed. The supplemental clerk's record contains an order dated June 9, 2004, appointing
attorney Greg Phifer to represent appellant Shannon Dewayne Thompson. The record,
however, reflects that on November 22, 2004, attorney Ronald T. Spriggs was retained to
enter an appearance as attorney of record for appellant. Also in the record is the trial
court's order of April 8, 2005, granting Spriggs's motion to withdraw. To promote judicial
efficiency, we now abate this appeal and remand the cause to the trial court for further
proceedings pursuant to Rule 35.3(c) of the Texas Rules of Appellate Procedure. 

 Upon remand, the trial court shall immediately cause notice of a hearing to be given
and, thereafter, conduct a hearing to determine the following: 

 1. whether appellant desires to prosecute the appeal; and

 2. whether appellant is indigent and entitled to appointed counsel.


The trial court shall cause a hearing to be transcribed. Should it be determined that
appellant does want to continue the appeal and is indigent, then the trial court shall also
take such measures as may be necessary to assure appellant effective assistance of
counsel, which measures may include the appointment of counsel. If counsel is appointed,
the name, address, telephone number, and state bar number of said counsel shall be
included in the order appointing counsel. Finally, the trial court shall execute findings of
fact, conclusions of law, and such orders as the court may enter regarding the
aforementioned issues and cause its findings and conclusions to be included in a
supplemental clerk's record. A supplemental record of the hearing shall also be included
in the appellate record. Finally, the trial court shall file the supplemental clerk's record and
the supplemental reporter's record with the Clerk of this Court by Friday, June 10, 2005.

 The court reporter's request for extension of time is held in abeyance pending the
trial court's findings and conclusions.

 It is so ordered.


 Per Curiam




Do not publish. 



#160;                                                        Appellee
_________________________________

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 17,290-A; HON. HAL MINER, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
          Frank Chacon was convicted of murder. He appeals that conviction by contending
1) he was improperly convicted by accomplice witness testimony for which there was no
corroboration, and 2) the evidence was legally and factually insufficient to sustain the
verdict. We disagree and affirm the judgment. 
          Background
          Appellant was part of a drug selling operation in Amarillo which operation was
headed by Craig Kimberlin. Other members of that operation included Josh Stocker, Josh
Bledsoe, Destry Keeling, and Michael Elliston. In 2002 and 2003, Kimberlin’s group was
experiencing problems created by Dustin Pool, the head of a rival drug operation. Pool
was believed to have been the informant for a police raid that was conducted at Kimberlin’s
house and was threatening Bledsoe who was the drug supplier for Kimberlin’s group. At
a meeting at Stumpy’s lounge in February 2003, Bledsoe suggested that he could hire
someone to kill Pool for $10,000.


 Another meeting concerning the Pool problem also took
place at Kimberlin’s residence. Thereafter, on March 9, 2003, Stocker, on his own
initiative, requested that a woman, Tori Patrick, lure Pool to her apartment. When Pool
arrived in the early morning hours of March 10, Stocker and his brother attacked Pool with
a fireplace poker. Stocker then called Kimberlin and told him he had Pool. 
          Kimberlin arrived at the apartment and called Elliston, who owned a place in the
country referred to as “the farm.” Kimberlin asked Elliston to bring a box to the apartment
that was big enough to hold a body. When Elliston arrived, Pool was placed in a
refrigerator box and transported to Elliston’s farm where he was taken to the second floor
of Elliston’s workshop. Stocker beat Pool during the course of the afternoon. Later,
appellant, Kimberlin, and Bledsoe arrived. Over a number of hours, Pool was beaten,
tortured, and had a sock stuffed in his mouth and his face duct taped. It is believed that
he died sometime in the early morning of March 11 from blunt force trauma to the head
and/or asphyxiation. Several days later, appellant, Kimberlin, and Keeling buried the body
in concrete at an abandoned grain silo. 
          
          Accomplice Witness Testimony
          Appellant initially claims that there is no non-accomplice corroboration of his
involvement in the murder. We overrule the issue.
          A conviction may not rest upon the testimony of an accomplice unless that testimony
is corroborated by other evidence tending to connect the defendant to the offense. Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). The other evidence need not directly link
the accused to the crime or establish his guilt beyond a reasonable doubt. McDuff v. State,
939 S.W.2d 607, 613 (Tex. Crim. App. 1997). It need only tend to connect him to the
offense. Id. at 613. In addition, “tending to connect” has been interpreted as “to serve,
contribute or conduce in some degree or way . . . to have a more or less direct bearing or
effect,” and while not contemplating conjecture, “has a tendency to prove the averments in
the indictment.” Holladay v. State, 709 S.W.2d 194, 198 (Tex. Crim. App. 1986), quoting
Boone v. State, 235 S.W. 580 (Tex. Crim. App. 1922); In re C.M.G., 905 S.W.2d 56, 58
(Tex. App.–Austin 1995, no pet.). Furthermore, each case must be decided upon its own
facts and circumstances. Martinez v. State, 163 S.W.3d 92, 94 (Tex. App.–Amarillo 2005,
no pet.).  
          Appellant’s own statement appears in the record before us. In that statement, he
admits to being present at a meeting where 1) the group spoke about the trouble Pool was
causing them and 2) one participant brought up the subject of hiring someone to kill Pool
for $10,000. The statement further reveals that appellant traveled to the scene of the
murder with Kimberlin, remained abreast of the conduct surrounding the disposition of
Pool’s body once Pool died, heard one of his compatriots say that if he “‘got bust [sic] we
were all going down,” went to the Home Depot to buy concrete and a trash can for water,
and ultimately helped bury Pool’s body in cement so it could not be found. While this alone
may not establish appellant’s guilt for murder it does tend to connect him to the crime. See
Rule v. State, 890 S.W.2d 158, 170 (Tex. App.–Texarkana 1994, pet. ref’d) (finding the
evidence sufficient to connect Rule to the murder because he was present at the murder
scene, helped dispose of the body and murder weapon and attempted to flee).
          Sufficiency of the Evidence
          Next, appellant challenges the sufficiency of the evidence to sustain his conviction. 
We overrule this issue as well.
          The standards by which we make such determinations are well known. We refer the
parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and
Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006) for an explanation of the same. 
          The medical examiner opined that Pool died from blunt force injuries and asphyxia
and that either one alone could have caused Pool’s death. Pool had a skull fracture that
included both a calvarial fracture and a basilar fracture which could have resulted from
multiple blows. The basilar fracture would have required a force much stronger than for the
simple linear fracture on top of the head. Furthermore, the injury could have been
exacerbated by continued blows to the head. 
          Appellant argues that he was not a part of the kidnaping and not responsible for the
blow to Pool’s head from the fireplace poker, therefore leaving suffocation as the only
possible means of murder by him. Nevertheless, it is undisputed that Pool was alive for a
considerable length of time after his initial head injury. Moreover, there was evidence from
Bledsoe that appellant struck Pool in the head with pliers when Pool was at the farm. Since
Pool could have died as a result of the trauma to his head alone and there is evidence that
appellant struck him in the head at the farm and/or encouraged Kimberlin to do so, a
rational jury could have found beyond a reasonable doubt that appellant was guilty of
murder and such a finding after a review of the entire record does not undermine our
confidence in the verdict. It is true that many of the witnesses gave multiple statements to
police and lied in some of those statements. However, it was for the jury to resolve any
conflicts in the evidence and determine which witnesses and what parts of their stories to
believe. Simply put, the evidence is legally and factually sufficient to support the conviction. 
          We overrule appellant’s issues and affirm the judgment of the trial court.
 
                                                                           Brian Quinn 
                                                                          Chief Justice 
Do not publish.