99-00228-CR.wpd



No. 04-99-00228-CR


John Rafael ELIZONDO,

Appellant 


v.


The STATE of Texas

Appellee


From the 226th Judicial District Court, Bexar County, Texas

Trial Court No. 98-CR-2179-A

Honorable Sid L. Harle, Judge Presiding


Opinion by: Tom Rickhoff, Justice

 

Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Sarah Duncan, Justice


Delivered and Filed: September 6, 2000


AFFIRMED


 A jury found John Rafael Elizondo guilty of possession of cocaine and possession of cocaine
with intent to deliver, and assessed punishment at twenty years confinement. On appeal, Elizondo
challenges the legal and factual sufficiency of the evidence to support the jury's finding that he was
guilty of possession with intent to deliver. Finding the evidence sufficient to support the jury's
verdict, we affirm.

Standard of Review

 When considering a legal sufficiency challenge to the evidence, we view all evidence and the
reasonable inferences therefrom in the light most favorable to the verdict. Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Wilkerson v. State, 881 S.W.2d 321, 324 (Tex. Crim.
App. 1994). We then determine whether any rational trier of fact could find the crime's essential
elements beyond a reasonable doubt. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; McDuff v. State,
939 S.W.2d 607, 614 (Tex. Crim. App. 1997). We apply the same standard of review to evidence
that is circumstantial as well as direct. See Geesa v. State, 820 S.W.2d 154, 158 (Tex. Crim. App.
1991).

 In considering a factual sufficiency challenge, we do not view the evidence through the prism
of "in the light most favorable to the prosecution." Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). Instead, we examine all
of the evidence impartially, and set aside the verdict only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Cain, 958 S.W.2d at 410; Clewis, 922
S.W.2d at 129. We must defer to the factfinder, and may find the evidence factually insufficient only
where necessary to prevent manifest injustice. See Cain, 958 S.W.2d at 407.

Legally Sufficient Evidence

 On the afternoon of February 11, 1998, Elizondo arranged a drug buy with an undercover
police officer, Officer Dillon. (1) Dillon agreed to buy the drugs in the parking lot of a Stop N Go store.
Elizondo told Dillon the person who would bring him the drugs would be carrying a Whataburger
cup. When Dillon arrived in the parking lot, Elizondo, who was acting as a lookout, signaled to Jovan
Benavides. Benevides approached Dillon, carrying the cup. When Dillon saw the drugs inside the
cup, he signaled for other police officers to approach and arrest Elizondo and Benevides. A third
individual, Winford Williams, also acted as a lookout. When the police arrested Elizondo and
Benevides, Williams ran to apartment #3, where the police caught up with him as he was attempting
to throw drugs out the apartment.

 Meanwhile, a search warrant was being executed on apartment #3. Inside apartment #3, the
police found three baggies of cocaine in the pocket of a jacket hanging inside a bedroom closet, a
scale used for measuring drugs in the kitchen, several baggies, and a pager.

 At trial, the State contended the drugs found inside the jacket pocket belonged to Elizondo.
The State offered the following evidence to tie Elizondo to the drugs in the jacket: uniform shirts with
the name "John" on a patch hanging in the bedroom closet, a receipt for $230 showing "John
Salazar" (2) had paid rent on apartment #3 found on a dresser in the bedroom, and other men's clothing.
The clothes found in the bedroom were consistent with Elizondo's size and were too small for the
other men who lived or stayed at the apartment. 

 Viewed in the light most favorable to the verdict, we hold the evidence was legally sufficient
to support the verdict.

Factually Sufficient Evidence Elizondo argues that the State did not prove the clothing found in apartment #3 belonged to
him, and the police confused him with his brother, Scott. Elizondo presented evidence that showed
his residence as apartment #2 in the same building, including his driver's license. Williams's name
was on a utility company statement found in apartment #3. Scott lived in apartment #3 until his death
about one week before Elizondo's arrest. One of the police officers involved in the arrest testified
that an undercover officer had bought drugs from Scott about two weeks before Elizondo's arrest.
Bernie Bishop, a supervisor for San Antonio Grounds Control, testified that John Salazar was one
of his employees. Bishop said he knew Elizondo went by the name of John Salazar. Bishop's
personnel files showed Elizondo lived in apartment #1 and #2, but no records showed him living in
apartment #3.

 After Scott's death, Scott's landlord asked Elizondo's brother-in-law, Jorge Perez, whether
anyone would pay Scott's past-due rent. Elizondo, who was present at the time, said he would pay
the rent. Perez said the receipt for $230 found by the police officers was for the past-due rent. Perez
testified that Elizondo never lived in apartment #3. After Elizondo paid the rent, he asked the
landlord for permission to move into apartment #3, and was told he could. Elizondo and Perez went
to Elizondo's mother's apartment (apartment #2), got his clothes (including the workshirts), and
moved them into apartment #3. As they were putting the clothes into the closet in apartment #3,
Perez saw the rent receipt fall to the floor, so he picked it up and put it on the dresser. Elizondo's
mother testified that he never moved into apartment #3 because he was too upset over Scott's death.
She said she gave her jacket, the one in which the drugs were found, to Scott to wear because he did
not have a jacket.

 We are not free to reweigh the evidence and set aside a jury verdict merely because the court
believes a different result is more reasonable. See Cain, 958 S.W.2d at 407; Clewis, 922 S.W.2d at
135. "[T]he appellate court must defer to jury findings, and may find the evidence factually
insufficient only where necessary to prevent manifest injustice." See Cain, 958 S.W.2d at 407. In
particular, the "weight to give contradictory testimonial evidence is within the sole province of the
jury, because it turns on an evaluation of credibility and demeanor." Id. at 408-09. It was within the
province of the jury to resolve the conflicts in the evidence in this case. Id. After reviewing all the
evidence impartially, we find the verdict was not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and manifestly unjust. We hold the evidence was factually sufficient
to support the jury's verdict.

 We affirm the trial court's judgment. 


 Tom Rickhoff, Justice

DO NOT PUBLISH
1. Before February 11, Dillon had made other drug purchases from Elizondo or his brother, Scott Salazar, at
apartment #3, 115 Victor. Dillon usually got in touch with Elizondo by paging him.
2. Elizondo also went by the name John Salazar.