MEMORANDUM OPINION




Nos. 04-02-00753-CR, 04-02-00754-CR, 04-02-00755-CR



Christopher Michael VASQUEZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 56th Judicial District Court, Galveston County, Texas


Trial Court Nos. 01CR1458, 01CR1459, and 01CR1460


Honorable Norma Venso, Judge Presiding



Opinion by: Phylis J. Speedlin, Justice


Sitting: Alma L. López, Chief Justice

 Sandee Bryan Marion, Justice

 Phylis J. Speedlin, Justice


Delivered and Filed: December 17, 2003


AFFIRMED

 Christopher Michael Vasquez ("Vasquez") was convicted of three separate offenses of
aggravated robbery, all of which allegedly occurred on or about August 8, 2001. The jury assessed
punishment at fifteen years confinement in each case, with the sentences to run concurrently. On
appeal, Vasquez challenges the sufficiency of the evidence and that the testimony against him lacks
corroboration under the accomplice-witness rule. We affirm the judgments of the trial court. 

Background 
 On August 8, 2001, shortly after 4:00 p.m., two men wearing ski masks robbed Luke's
Convenience Store at gunpoint in Galveston, Texas. Both suspects exited the store and ran down
83rd Street. Upon receiving the dispatch call of a robbery in progress, Officer Dustin Sims of the
Galveston Police Department, immediately turned onto 83rd and witnessed the two suspects running
down the street. He chased them in his vehicle and eventually apprehended one of them, David
Serenil. Officer Sims also saw the second suspect get into the passenger seat of a Jeep Cherokee and
drive off with an accomplice. During their attempted getaway, they were chased by two other police
officers, John Bertolino and Sammy Parks. Eventually, the two unidentified suspects abandoned the
Jeep and fled on foot.

 After Serenil had been arrested, a perimeter was set up in the general vicinity of where the
Jeep was abandoned, which included the neighborhood of Kathy Serenil, David Serenil and
Vasquez's aunt. Eventually, the Jeep was searched and a K-9 unit was called in to track the suspects,
however, the scent was deemed inconclusive. Upon searching the perimeter, the officers went to
Kathy Serenil's residence and found Vasquez and Christopher Ivey ("Ivey") hiding in the attic, where
they were both immediately arrested. Upon their arrest, Vasquez, Ivey, and Serenil were all charged
with aggravated robbery. (1) 

 Non-Accomplice Testimony and Corroboration
 Vasquez asserts the evidence is insufficient because the State's case is supported only by the
uncorroborated testimony of Ivey, whom he claims is an accomplice witness. An accomplice witness
is someone who participated before, during, or after the commission of the crime. See Blake v. State,
971 S.W.2d 451, 455 (Tex. Crim. App. 1998). A person who may be indicted for the same offense,
or for a lesser included offense based on alleged participation in the commission of the greater
offense, is considered an accomplice as a matter of law. Ex Parte Zepeda, 819 S.W.2d 874, 876
(Tex. Crim. App. 1991); Kunkle v. State, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986). Under the
Texas Code of Criminal Procedure, a conviction cannot stand based on accomplice testimony unless
it is corroborated by other evidence tending to connect the defendant with the offense. Evidence is
insufficient if it proves merely the commission of the offense. See Texas Code Crim. Proc. Ann.
art. 38.14 (Vernon 2002); Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999).

 In conducting a sufficiency review under the accomplice-witness rule, a reviewing court must
eliminate the testimony of the accomplice from consideration and then examine the remaining
portions of the record for any evidence that tends to connect the accused with the commission of the
crime. Solomon v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). We apply the "tendency to
connect" rule rather than the rational sufficiency standard because the corroborating evidence need
not be sufficient by itself to establish guilt. Id. If the combined weight of the non-accomplice
evidence tends to connect the defendant to the offense, the requirements under the Texas Code of
Criminal Procedure have been fulfilled. Cathey, 992 S.W.2d at 462.

 Furthermore, all of the facts and circumstances may be examined for corroboration, and the
corroborative evidence may be circumstantial or direct. Gosch v. State, 829 S.W.2d 775, 777 (Tex.
Crim. App. 1991). Evidence of the defendant's presence at the scene, in addition to other suspicious
circumstances, even seemingly insignificant ones, may well be enough to connect the defendant to
the offense. Downhitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996). Similarly, evidence
that the defendant was in the presence of the accomplice at or near the time or place of the offense
is proper corroborating evidence. McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). 
 We disagree that the State's case is only supported by the uncorroborated testimony of Ivey.
Vasquez's mother testified that all three suspects, Vasquez, Serenil, and Ivey, knew each other.
Serenil was her nephew and Ivey dated her daughter and worked with her son. Ms. Vasquez further
testified that on the afternoon of the robbery, she had dropped off her son at the home of her sister,
Kathy Serenil. The State also called Officer Sims who testified that Vasquez fit the physical
description of the suspect he witnessed fleeing the scene immediately after the crime along with
Serenil, the suspect Officer Sims was able to apprehend. Officer Parks further testified that he
observed two individuals abandon the Jeep Cherokee they were pursuing. The passenger was
wearing bright yellow shorts when he fled the scene. Vasquez was found and arrested wearing bright
yellow shorts. Additionally, Vasquez was ultimately located near where the Jeep had been
abandoned and in the company of Ivey. 

 It is undisputed Vasquez attempted to avoid police officers on the day of the robbery by
hiding in the attic of his aunt's house. Vasquez's explanation as to why he was hiding is suspicious.
He contends that he chose to hide in the attic because there were other, unrelated warrants out for
his arrest, not because he took part in the earlier robbery of the convenience store. Taken together,
the combined weight of the testimony from non-accomplice witnesses tends to place Vasquez at the
scene of the crime, at or near the getaway vehicle, and in the presence of Ivey immediately after the
offense. In addition, the suspicious circumstances of Vasquez's efforts to avoid police also tends
to connect him with the offense. Accordingly, we overrule Vasquez's first issue.

 Sufficiency Of The Evidence
 Vasquez also argues that there was insufficient evidence to sustain his conviction because
he was never positively identified for the robbery. We review the legal and factual sufficiency of
the evidence under the traditional standards of review. See Cain v. State, 958 S.W. 2d 404, 407
(Tex. Crim. App. 1997).

 Vasquez contends no one other than Ivey, the accomplice-witness, actually positively
identified him as taking part in the robbery. Police Officers Sims, Bertolino, and Parks merely
identified him as fitting the description of the suspect being chased. Additionally, Vasquez
maintains the evidence is insufficient because there was no fingerprint evidence linking him to the
robbery, and even the police dog went in the opposite direction of where Vasquez was located at
Kathy Serenil's house.

 Viewing the evidence in the light most favorable to the verdict, we find sufficient evidence
to support the jury's determination that Vasquez was guilty beyond a reasonable doubt. Despite the
absence of a positive identification, where the totality of circumstances show no substantial
likelihood of misidentification, the testimony is considered reliable. See Cooks v. State, 844 S.W.2d
697, 731 (Tex. Crim. App. 1992); Fearance v. State, 771 S.W.2d 486, 510 (Tex. Crim. App. 1988);
Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988). Here, the record contains ample
evidence to support the officers' identification of Vasquez, including that he (i) matched the physical
description of the suspect that exited the convenience store and got into the passenger seat of the
Jeep, (ii) was wearing bright yellow shorts at the time of his arrest matching the description of those
worn by the passenger when he abandoned the Jeep; and (iii) was found hiding with Ivey, who was
later convicted for his role in the robbery. 

 Furthermore, Vasquez's argument lacks merit because a rational jury could have found the
elements of the offense beyond a reasonable doubt without fingerprint evidence. Officer Gary Jones,
a latent-fingerprint examiner for the Galveston Police Department, testified that fingerprint evidence
is often inconclusive even if someone directly touches an object. In this case, there were only trace
amounts of a print taken from the passenger side of the Jeep. Because of this, Jones testified that
he was unable to make a proper identification. Applying Vasquez's reasoning would mean he was
not the suspect that was sitting on the passenger side of the Jeep. Yet, as Jones explained, the
absence of a person's fingerprints does not prove the absence of the person from the crime scene. 

 Similarly, Officer Jeremy Schwartz of the Galveston K-9 Unit, gave extensive testimony on
the training his bloodhound had received. He explained that his dog was trained using the "scent
sample" technique where the airborne scent left by a person is what the dog is trained to follow.
Schwartz testified that he arrived shortly after the perimeter had been established. Schwartz further
testified that the dog was given a "scent sample" from the Jeep, but eventually headed in the wrong
direction and lost the scent. Schwartz, however, also explained that his dog was trained to follow
the scent of a single person, although it may encounter hundreds of scents because of the number of
people that travel past a particular place. Therefore, the dog does not always start off in the right
direction because of possible confusion.

 While different theories could possibly be inferred from the evidence, the jury was able to
consider these theories, accept one, and reject the other. See Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993). In viewing the evidence in the light most favorable to the verdict we conclude
that the evidence supports the conviction. See McDuff, 939 S.W.2d at 626. Additionally, the jury's
verdict was not so against the great weight of the evidence as to be clearly wrong and unjust.
Johnson v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000). Accordingly, we affirm the trial court's
judgments.

 Phylis J. Speedlin, Justice


Do Not Publish 


1. Ivey, the accomplice-witness, was convicted of aggravated robbery prior to the time of Vasquez' trial.