Affirmed and Memorandum Opinion filed May 11, 2004









Affirmed and Memorandum Opinion filed May 11, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-00072-CR

____________

 

RUSSELL
ALFRED DAGOSTINO, Appellant

 

V.

 

THE STATE
OF TEXAS, Appellee

 

_________________________________________________________

 

On Appeal from the County Court at Law Number Two

Fort Bend County, Texas

Trial Court Cause No. 97610

 

_________________________________________________________

 

M E M O R A N D U M   O P I N I O N

Appellant Russell Alfred
Dagostino asserts the evidence is legally and factually insufficient to support
his conviction for misdemeanor assault. 
We affirm.

I.  Factual and
Procedural Background

Appellant pleaded not guilty to
the misdemeanor assault of his common-law wife, Julie Tilton.  A jury found appellant guilty, and the trial
court assessed punishment at 365 days in the county jail, probated for twenty-four
months, and a $200 fine.  








In appellant=s sole
issue on appeal, he asserts that the evidence is legally and factually
insufficient to support his conviction for misdemeanor assault because the
evidence shows that his actions were accidental rather than intentional,
knowing, or reckless.

II.  Analysis

At trial, Pamela Johnson, a Fort
Bend County 9-1-1 operator, testified that, on February 1, 2002, she received a
9-1-1 call from Julie Tilton, the complainant. 
Johnson testified that the complainant said she was assaulted, choked,
and slapped.  Johnson also testified that
the complainant told her that appellant was leaving and that a friend was
coming to pick him up.

Deputy James Hutson of the Fort
Bend County Sheriff=s
Department testified that he was on patrol duty on February 1, 2002, when he
received a call from a 9-1-1 operator to go to an apartment in Fort Bend County.  He arrived there in approximately three
minutes.  Upon his arrival, Deputy Hutson
saw the complainant in the doorway of the apartment, crying, breathing quickly,
with a scratch and blood on her chin and redness around her neck and collarbone
area.  Deputy Hutson testified that the
complainant appeared to be very upset, hysterical, and distraught.  The complainant told Deputy Hutson that her
husband, appellant, had hit her, slapped her with both hands, thrown her on a
bed, and choked her, causing her to stop breathing for a moment.  The complainant also stated that appellant
told her that if she called the police, appellant would kill her.  Deputy Hutson testified that the injuries to
the complainant that he observed were consistent with what the complainant told
him had happened.  Deputy Hutson took
photographs of the complainant=s
injuries. These photographs were admitted in evidence at trial.  Deputy Hutson testified that the complainant
never told him that her injuries were the result of an accident and that
appellant denied assaulting the complainant. 
Deputy Hutson testified that he determined that an assault had
occurred.  








The complainant testified that
she was living with the appellant and their two-year-old daughter at the time
of the incident in question.  The
complainant said that appellant was asleep when she answered a telephone call
from her adult daughter=s fiancé,
who invited her to go to a casino in Louisiana. 
The complainant told her daughter=s fiancé
that she needed to check with appellant. 
The complainant testified she woke appellant up and then he slapped her,
threw her on the bed, and began choking her using both of his hands.  The complainant testified that, as a result
of this incident, she received a scratch on her chin and bruises on her
neck.  She also testified that she needed
appellant=s help with their young daughter
during the period following her impending surgery for cervical cancer.  A week after the incident, on February 8,
2002, the complainant told the detective in charge of her case that she wanted
to drop the charges, and she faxed to this detective a document stating that
she had awakened appellant, that the incident was her fault, and that she
wanted to drop the charges.  The
complainant testified that she never stated that appellant had not assaulted
her.  She also stated that appellant
threatened to kill her and their daughter if he served one day of probation or
went to jail.  The complainant also
testified that appellant stated he would not pay any child support if he
received probation or jail time for this incident.  The complainant testified that she went to
the office of appellant=s
attorney and signed a sworn, written statement in an effort to have the charges
against appellant dropped.








On cross-examination, the complainant
admitted that her February 8, 2002, statement indicated that she woke appellant
from a sleep, that she startled him, and that he did not intend to strike
her.  On direct examination the
complainant said she never told the police that this was an accident.  On cross-examination the complainant admitted
telling the police on February 8, 2002, that what happened to her was an
accident or mistake; however, she stated that this statement was not true but
was made for the reasons she stated earlier. 
The complainant admitted that her sworn statement in the office of
appellant=s counsel was similar to her
February 8, 2002 statement, but, at trial, she said that this statement
contained the following items that are not true: (1) the complainant hit
appellant in the chest rather hard and woke him up; (2) appellant straddled the
complainant and had his arms around her shoulder; (3) after these events,
appellant and the complainant had an argument and only after appellant called a
friend named Isabelle did the complainant call 9-1-1; (4) the complainant does
not believe that appellant intended to harm her; and (5) the complainant had
been taking prescription medicines for pain the entire day.

In this sworn statement, the complainant
says appellant reflexively straddled her after she woke him up.  On cross-examination, when specifically asked
whether she objected to the use of Areflexively@ in her
statement, the complainant said that, all she knows is that she assumes she
startled appellant.  The complainant
testified that she had been taking various prescription drugs during this
period but she does not know if she took any on the night of the incident in
question.  After being confronted with
her written statement of February 8, 2002, and her sworn statement signed in
appellant=s attorney=s office,
the complainant still stood by her testimony on direct examination that
appellant slapped and choked her. 
Neither of these prior written statements by the complainant were
admitted in evidence.

The complainant=s adult
daughter testified that she and her fiancé arrived at her mother=s
residence on the night of the incident and that her mother told her that
appellant thought the complainant and her daughter=s fiancé
were having an affair and that appellant slapped and choked the
complainant.  According to the adult
daughter, the complainant  thought she
was going to die as a result of the choking. 
The fiancé of complainant=s adult
daughter testified that, on the night of the incident in question, the
complainant told him that appellant got on top of her and strangled her.  








Patricia Webber, the detective
who was assigned to appellant=s case,
testified that the complainant signed a non-prosecution form and told her that
she did not want to pursue the charges against appellant because she was going
to have an emergency surgical procedure and she needed help caring for her
young daughter at home.  Webber testified
that on February 8, 2002, the complainant faxed her an affidavit stating that
she had just waked appellant, that appellant was extremely exhausted, did not
intend to harm her, and did not know what was happening.  

Under the pertinent part of the
Texas Penal Code, a person commits an assault if the person Aintentionally,
knowingly, or recklessly causes bodily injury to another, including the
person's spouse.@ Tex. Pen. Code '
22.01(a)(1).  The Texas Penal Code also
states that bodily injury means Aphysical
pain, illness, or any impairment of physical condition.@ Tex. Pen. Code ' 1.07(a)(8).  Appellant asserts that the evidence is
legally and factually insufficient to support his conviction because the
evidence shows that his actions were accidental rather than intentional,
knowing, or reckless. 








In evaluating a legal-sufficiency
challenge, we view the evidence in the light most favorable to the
verdict.  Wesbrook v. State, 29
S.W.3d 103, 111 (Tex. Crim. App. 2000). 
The issue on appeal is not whether we, as a court, believe the State=s
evidence or believe that appellant=s
evidence outweighs the State=s
evidence.  Wicker v. State, 667
S.W.2d 137, 143 (Tex. Crim. App. 1984). 
The verdict may not be overturned unless it is irrational or unsupported
by proof beyond a reasonable doubt. Matson v. State, 819 S.W.2d 839, 846
(Tex. Crim. App. 1991).  The jury, as the
trier of fact, Ais the
sole judge of the credibility of the witnesses and of the strength of the
evidence.@  Fuentes v. State, 991 S.W.2d 267, 271
(Tex. Crim. App. 1999).  The jury may
choose to believe or disbelieve any portion of the witnesses=
testimony.  Sharp v. State, 707
S.W.2d 611, 614 (Tex. Crim. App. 1986). 
When faced with conflicting evidence, we presume the trier of fact
resolved conflicts in favor of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex.
Crim. App. 1993).  Therefore, if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).  Although the
complainant was impeached with her two prior statements that indicated
appellant=s actions were accidental, at
trial she testified to the contrary, and this testimony was corroborated by
other witnesses.  There was conflicting
evidence as to what took place on February 1, 2002, but we presume the jury
resolved conflicts in favor of finding that appellant=s actions
were voluntary.  See Turro,
867 S.W.2d at 47. After applying the legal-sufficiency standard of review, we
conclude that a rational trier of fact could have found the essential elements
of this offense beyond a reasonable doubt, and therefore we overrule appellant=s
legal-sufficiency challenge.  See
McDuff, 939 S.W.2d at 614.  

When evaluating a challenge to
the factual sufficiency of the evidence, we view all the evidence without the
prism of Ain the light most favorable to
the prosecution@ and set
aside the verdict only if it is Aso
contrary to the overwhelming weight of the evidence to be clearly wrong and
unjust.@  Johnson v. State, 23 S.W.3d 1, 6B7 (Tex.
Crim. App. 2000). This concept embraces both Aformulations
utilized in civil jurisprudence, i.e., that evidence can be factually
insufficient if (1) it is so weak as to be clearly wrong and manifestly unjust
or (2) the adverse finding is against the great weight and preponderance of the
available evidence.@  Id. at 11. 
Under this second formulation, the court essentially compares the
evidence which tends to prove the existence of a fact with the evidence that
tends to disprove that fact.  Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).  In conducting the factual-sufficiency review,
we must employ appropriate deference so that we do not substitute our judgment
for that of the fact finder.  Id.
at 648.  Our evaluation should not
intrude upon the fact finder=s role as
the sole judge of the weight and credibility given to any witness=s
testimony.  Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997). 
After  viewing all the evidence
without the prism of Ain the
light most favorable to the prosecution,@ we
conclude that the verdict is not Aso
contrary to the overwhelming weight of the evidence to be clearly wrong and
unjust.@  See Johnson, 23 S.W.3d at 6B7.  Therefore, we overrule appellant=s
factual-sufficiency challenge.  








Having
found no merit in appellant=s
challenge to the legal and factual sufficiency of the evidence, we overrule
appellant=s sole issue on appeal and affirm
the trial court=s
judgment.

 

/s/        Kem
Thompson Frost

Justice

 

Judgment rendered and Memorandum Opinion filed May 11, 2004.

Panel consists of Justices Edelman, Frost, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).