In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-05-00443-CR
____________

FELONTA CONWAY PRINCE, Appellant

V.

STATE OF TEXAS, Appellee




On Appeal from the 338th District Court 
Harris County, Texas
Trial Court Cause No. 972592




MEMORANDUM OPINION ON REHEARING
          Appellant has filed a motion for rehearing raising five points of error. 
Appellant contends that our original opinion relied on facts not supported by the
record, that we erred in holding that the evidence was sufficient to corroborate
accomplice-witness testimony, that we erred in holding that the evidence was
legally sufficient to sustain appellant’s conviction, that we erred in following
binding precedent, and that we erred in determining that the testimony of Frederick
Williams did not affect the jury’s judgment. We grant the motion, withdraw our
opinion and judgment dated January 12, 2006, and issue this opinion and judgment
in their stead. Although we have clarified some of our factual assertions, our
disposition of each of appellant’s original points of error remains the same. Given
our disposition of appellant’s motion for rehearing, appellant’s motion for en banc
consideration on rehearing is denied as moot. 
          A jury convicted appellant, Felonta Conway Prince, of capital murder. See
Tex. Pen. Code Ann. § 19.03(a)(2) (Vernon Supp. 2005) (proscribing murders in
the course of, among other crimes, robbery). The State had not sought the death
penalty, and the trial court assessed punishment at life imprisonment. See Act of
May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3602
(providing for automatic life imprisonment when State does not seek death
penalty), amended by Act of May 28, 2005, 79th Leg., R.S., ch. 787, § 1, 2005
Tex. Gen. Laws 2705, 2705 (current version at Tex. Pen. Code Ann. § 12.31(a)
(Vernon Supp. 2005)). We determine (1) whether there is sufficient corroboration
of accomplice-witness testimony to sustain appellant’s conviction; (2) whether the
evidence was legally and factually sufficient to show that appellant intentionally
committed the murder of Ricardo Rodriguez in the course of committing a robbery;
and (3) whether the prosecutor engaged in prosecutorial misconduct by suborning
perjurious testimony. We affirm.
Facts
          In December of 2003, appellant enlisted Abraham Villagomez to help
appellant carry out a rip-off of a drug dealer. On December 27, 2003, appellant
arrived at Villagomez’s apartment, where they planned the rip-off, sometime
between 9:00 p.m. to 9:30 p.m. About an hour later, the complainant, Ricardo
Rodriguez, arrived. Appellant struck the complainant in the head, causing him to
fall face down on the floor. Villagomez and appellant taped the complainant’s
hands and legs with duct tape that appellant had brought over earlier. Then they
carried the complainant to Villagomez’s Honda and placed him in the trunk.
          Villagomez drove north on Loop 610 and entered the Hardy Toll Road. 
Appellant was in the front passenger seat. They could hear the complainant
struggling in the trunk. Appellant became angry, yelling at the complainant to
stop. Appellant then shot his .38 millimeter revolver three times through the back
seat into the trunk. After passing through a couple of toll booths, Villagomez
exited and stopped in a U-turn underneath a bridge. He and appellant opened the
trunk to find the complainant still alive. Appellant then shot the complainant in the
head and told Villagomez to take him out. Villagomez took the complainant out of
the trunk and placed him on the side of the curb. Appellant and Villagomez then
got back in the Honda, appellant fired the rest of the rounds at the complainant, and
they drove off, “burning rubber.” In addition to stealing the complainant’s
cocaine, appellant took the keys to the complainant’s Infiniti, and Villagomez took
the complainant’s shoes and money.
          Alva Wade Walker, a resident whose home backed up to the Hardy Toll
Road near the turnaround, heard two gunshots around 10:37 p.m. At
approximately 11:00 p.m., a furniture delivery man, Armando Martinez,
discovered the body as he drove through the turnaround. He called 911 from his
cellular phone.
          The next morning, appellant enlisted 19-year-old Frederick Williams, who
lived at the same apartment complex as Villagomez, to help remove the tires from
the complainant’s Infiniti. Williams observed appellant move Villagomez’s Honda
from one location in the complex parking lot to another location farther back. 
Williams had previously seen appellant drive the Honda in the company of
Villagomez. Appellant told Williams that he had shot a person, taken his drugs
and money, and kept his car. According to Williams, appellant said that he had
been a passenger when he turned around and fired twice at the person sitting in the
back seat of the car, that he then moved the person to the trunk, and that he then
finished the person off with a shot to the head. Williams observed two bullet holes
in the back seat of the Honda.
          At 8:29 a.m. that morning, police officers responded to an auto-theft-in-progress call at the same apartments. Houston Police Officer Merlie Brown
approached appellant and Williams, who were standing near the complainant’s
Infiniti. The two appeared to be removing the tires from the Infiniti. Appellant
fled and escaped. Williams told a deputy at the scene that appellant and
Villagomez were often together. Arrest warrants were obtained for Villagomez
and appellant. When Villagomez was arrested, he admitted his participation in the
murder of the complainant.
          The deputy who processed the Honda found bullet holes in the back seat and
blood in the trunk. The deputy medical examiner who conducted the autopsy
found wounds consistent with the complainant’s having been shot through the back
seat and then in the head. The shot to the head produced a contact wound that was
the cause of death.
          Later, Shawn Carville, another person whom appellant had tried to enlist in
removing the tires from the complainant’s Infiniti, gave a written statement, in
which he said that appellant had admitted shooting a guy three times while the guy
was in the trunk, opening the trunk, and then shooting the guy in the head. Carville
also testified at trial that Villagomez, a couple of times before Christmas, had
discussed committing a murder rip, which Carville described as “setting up a key,
the guy doesn’t carry, you know, beat his ass, trunk him.”
Accomplice-Witness Corroboration
          In his first point of error, appellant contends that there is insufficient
corroboration of accomplice-witness testimony to sustain his conviction. 
Appellant argues that the testimony of Williams was insufficient to tend to connect
appellant to the crime because of inconsistencies between Williams’s testimony
and that of Villagomez, the investigating deputies, and the deputy medical
examiner.
          Article 38.14 of the Texas Code of Criminal Procedure requires that the
testimony of an accomplice witness be corroborated by other evidence tending to
connect the defendant with the offense committed. Tex. Code Crim. Proc. Ann.
art. 38.14 (Vernon 2005). Because Villagomez was charged by indictment with
the same offense, he was an accomplice witness as a matter of law, and the trial
court instructed the jury that it must find his testimony corroborated by other
evidence tending to connect appellant to the offense. The test for corroboration is
to eliminate from consideration the accomplice witness’s testimony and then to
examine the other inculpatory evidence to see if it tends to connect the defendant to
the offense. McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). 
          The State points out several types of non-accomplice evidence that tend to
connect appellant to the offense: (1) admissions that appellant made to both
Williams and Shawn that he had shot a man in the same, unique way in which the
complainant had been shot; (2) appellant’s possession of the complainant’s Infiniti
shortly after the murder; and (3) appellant’s recent use of the car used to commit
the offense. We agree with the State as to the existence of these types of non-accomplice evidence. We hold that any of this evidence would be sufficient in
itself, but, in conjunction, that they overwhelmingly tend to connect appellant to
the capital murder of the complainant.
          Accordingly, we overrule appellant’s first point of error.
Legal and Factual Sufficiency of the Evidence
          In his second point of error, appellant contends that the evidence is legally
and factually insufficient to support his conviction. 
A.      Standards of Review
          In a legal-sufficiency review, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In reviewing a factual-sufficiency challenge, we ask “whether a neutral review of all the evidence, both
for and against the finding, demonstrates that the proof of guilt is so obviously
weak as to undermine confidence in the jury’s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof.” 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). The factual-sufficiency
standard “acknowledges that evidence of guilt can ‘preponderate’ in favor of
conviction but still be insufficient to prove the elements of the crime beyond a
reasonable doubt.” Zuniga v. State, 144 S.W.3d 477, 485 (Tex. Crim. App. 2004). 
Under either type of sufficiency review, the appellate court should not substitute its
own judgment for that of the fact finder. Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996). The fact finder is entitled to believe all, some, or none of
any witness’s testimony. Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.
1986).B.Legal Sufficiency
          Appellant contends that the evidence is legally insufficient to show that he
intentionally committed murder while committing or attempting to commit
robbery, making the following arguments in support: (1) there was no physical
evidence supporting the allegation that the defendant killed the complainant; (2)
there was no physical evidence supporting the allegation that defendant robbed or
intended to rob the complainant; (3) there was no evidence of the firearm used to
murder the complainant, and the actual murder weapon had not been determined;
and (4) the prosecution did not scientifically ascertain whether Villagomez or the
defendant had fired a weapon recently, despite law enforcement’s sizeable
opportunity to do so.
          A legal-sufficiency review considers the evidence in the light most favorable
to the verdict. When viewed in the appropriate light, the evidence, detailed earlier,
shows that appellant planned to rob and to murder the complainant; that appellant
enlisted Villagomez to help him; that appellant shot the complainant first through
the back seat of Villagomez’s car, as the complainant lay bound by duct tape, and
then point blank in the head; and that appellant fled when police converged on him
and Williams the next morning while they were removing the tires from the
complainant’s car. We hold that a jury, viewing this evidence, could rationally
have concluded that appellant committed murder by the alleged means during the
course of committing robbery of the complainant. Appellant’s arguments do not
undermine this evidence because they are not based on evidence that is viewed in
the appropriate light. Indeed, they are based on lack of evidence. Therefore, we
hold that the evidence is legally sufficient to support the verdict.
C.      Factual Sufficiency
          Also in his second point of error, appellant argues that the evidence showing
guilt is against the great weight and preponderance of the evidence based on the
following: (1) Kahlil Ahmed, an employee at the One Dollar Bazaar Store on
Edgebrook, testified that Carville had been in his store with two other individuals
until 9:40 p.m. on the night of the murder;


 (2) Carville testified that he and
appellant had been together at the One Dollar Bazaar Store at I-45 and Edgebrook
and had returned to appellant’s apartment complex at 10:00 p.m.; (3) Nancy
Domiguez testified that her husband, the complainant, had left home between 9:45
p.m. and 10:00 p.m., heading North on I-45 to Gulf Bank Road; (4) Villagomez
testified that appellant arrived at his apartment at about 9:30 p.m., that the victim
arrived about one hour later, and that, upon arrival, it took appellant and him about
15 to 20 minutes to put the victim into the trunk of appellant’s vehicle; (5) Walker
testified that she heard gunshots at approximately 10:37 p.m.; (6) Martinez testified
that he discovered the body at approximately 11:00 p.m.; (7) Lewis Eakins testified
that the distance from appellant’s apartment complex to the place of discovery was
37 miles; and (8) it was physically impossible for appellant to have been present at
both the One Dollar Bazaar store on Edgebrook until 9:40 p.m. and at
Villagomez’s apartment at 9:30 p.m. and still to have shot the victim under the
overpass at Hardy Toll Road at 10:37 p.m., so that his body could have been
discovered at 11:00 p.m. 
          Much of appellant’s challenge rests on the credibility of the defense
witnesses as to the precise times at which events happened and the alleged
incredibility of the State’s witnesses regarding the time of events. However, the
Court of Criminal Appeals has instructed that, in conducting a factual-sufficiency
review, “[t]he reviewing court should not substantially intrude upon the jury’s role
as the sole judge of the weight and credibility of witness testimony.” Ortiz v. State,
93 S.W.3d 79, 88 (Tex. Crim. App. 2002). The jury simply may have disbelieved
appellant’s evidence, may also simply not have believed that all of the witnesses’
memories were perfectly accurate regarding the time of events, or may instead
have believed the State’s witnesses. We will not intrude on the jury’s role
concerning credibility in these circumstances. Appellant invites this Court to
disregard the general rule concerning credibility stated above. We decline to do so
because, “[a]s an intermediate appellate court, we must follow binding precedent
of the Court of Criminal Appeals.” McKinney v. State, Nos. 01-03-00565-CR, 01-03-00734-CR, 01-03-00735-CR, 2005 WL 327145, at *3 (Tex. App.—Houston
[1st Dist.] Feb. 10, 2005, pet. granted).
          We hold that the evidence on which appellant relies does not so undermine
the evidence supporting guilt as to render the verdict clearly wrong or manifestly
unjust. Accordingly, we hold that the evidence is factually sufficient to support the
verdict.
          We overrule appellant’s second point of error.
 
Prosecutorial Misconduct
          In his third point of error, appellant contends that the State engaged in
prosecutorial misconduct. Appellant alleges that one of the State’s witnesses
committed perjury during the trial on the merits, the prosecutor was aware of the
perjured testimony, and the prosecutor did nothing to correct the false testimony. 
          A person commits aggravated perjury if, with intent to deceive and with
knowledge of the statement’s meaning, he or she makes a false statement under
oath in connection with an official proceeding and the false statement is material. 
Tex. Pen. Code Ann. §§ 37.02, 37.03, 37.04 (Vernon 2003). A statement is
material if it could have affected the course or outcome of the official proceeding. 
Id. § 37.04(a). Testimony that could have affected the course of the proceeding is
material when such testimony, if believed by the finder of fact, bears directly on
the credibility of the State’s witnesses. Mitchell v. State, 608 S.W.2d 226, 228
(Tex. Crim. App. 1980). Materiality refers to statements having some substantial
potential for obstructing justice and excludes utterly trivial falsifications. Id. 
          In this case, appellant argues that Williams’s testimony concerning
Williams’s never having touched the Infiniti—as well as Williams’s testimony that
appellant carried a pistol; wore a cotton jacket; shot the complainant in the head,
chest, and stomach; placed the body in an empty field; and covered it up with
sticks and trees—was perjured. When trial counsel for appellant brought up the
matter during trial, the prosecutor did not recall any material variances, and trial
counsel for appellant twice asserted that he was not questioning the integrity of the
prosecutor. The trial court advised that these were matters concerning which trial
counsel could cross-examine the witness.
          Indeed, trial counsel had already attempted to show that the witness varied
his description of the material of appellant’s jacket from one videotaped statement
to the next. When confronted, however, the witness could not remember having
said that the jacket was leather and testified in conformity to his videotaped
statement, in which he had said that the jacket was cotton. Regarding the locations
of the gunshot wounds, the witness did not purport to have been present to have
personally witnessed the wounds. The same is true regarding covering up the body
with sticks and trees. Appellant’s brief on appeal does not explain how the
witness’s having testified to observing appellant carrying a pistol constitutes
perjury.
          More importantly, appellant’s brief does not explain how any inconsistency
mentioned by appellant could have affected the course or outcome of the trial. 
Certainly, trial counsel’s use of the inconsistencies in the witness’s two videotaped
statements and the witness’s testimony at trial was abundantly developed before
the jury, so that the jury could determine which, if any, version of the witness’s
testimony was credible. However, even if this Court or the jury had determined
that each portion of the witness’s testimony of which complaint is made on appeal
was perjurious, appellant has not shown that it would have affected the ultimate
judgment of the jury that appellant was guilty of capital murder. See United States.
v. Bagley, 473 U.S. 667, 678, 105 S. Ct. 3375, 3381-82 (1985) (stating that
defendant is entitled to new trial if false testimony could in any reasonable
likelihood have affected jury’s verdict).
          Accordingly, we overrule appellant’s third point of error.
Conclusion
We affirm the judgment of the trial court.
 

 

     Tim Taft
     Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).