NO. 07-07-0029-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

FEBRUARY 14, 2008

_____

FRANK CHACON,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 47TH DISTRICT COURT OF RANDALL COUNTY;

NO. 17,290-A; HON. HAL MINER, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Frank Chacon was convicted of murder. He appeals that conviction by contending 1) he was improperly convicted by accomplice witness testimony for which there was no corroboration, and 2) the evidence was legally and factually insufficient to sustain the verdict. We disagree and affirm the judgment.

*Background*

Appellant was part of a drug selling operation in Amarillo which operation was headed by Craig Kimberlin. Other members of that operation included Josh Stocker, Josh

Bledsoe, Destry Keeling, and Michael Elliston. In 2002 and 2003, Kimberlin's group was experiencing problems created by Dustin Pool, the head of a rival drug operation. Pool was believed to have been the informant for a police raid that was conducted at Kimberlin's house and was threatening Bledsoe who was the drug supplier for Kimberlin's group. At a meeting at Stumpy's lounge in February 2003, Bledsoe suggested that he could hire someone to kill Pool for $10,000.[1] Another meeting concerning the Pool problem also took place at Kimberlin's residence. Thereafter, on March 9, 2003, Stocker, on his own initiative, requested that a woman, Tori Patrick, lure Pool to her apartment. When Pool arrived in the early morning hours of March 10, Stocker and his brother attacked Pool with a fireplace poker. Stocker then called Kimberlin and told him he had Pool.

Kimberlin arrived at the apartment and called Elliston, who owned a place in the country referred to as "the farm." Kimberlin asked Elliston to bring a box to the apartment that was big enough to hold a body. When Elliston arrived, Pool was placed in a refrigerator box and transported to Elliston's farm where he was taken to the second floor of Elliston's workshop. Stocker beat Pool during the course of the afternoon. Later, appellant, Kimberlin, and Bledsoe arrived. Over a number of hours, Pool was beaten, tortured, and had a sock stuffed in his mouth and his face duct taped. It is believed that he died sometime in the early morning of March 11 from blunt force trauma to the head and/or asphyxiation. Several days later, appellant, Kimberlin, and Keeling buried the body in concrete at an abandoned grain silo.

---

[1]There was conflicting evidence as to whether this was intended as a serious offer.

*Accomplice Witness Testimony*

Appellant initially claims that there is no non-accomplice corroboration of his involvement in the murder.  We overrule the issue.

A conviction may not rest upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant to the offense.  TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005).  The other evidence need not directly link the accused to the crime or establish his guilt beyond a reasonable doubt.  *McDuff v. State,* 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).  It need only tend to connect him to the offense.  *Id.* at 613.  In addition, "tending to connect" has been interpreted as "to serve, contribute or conduce in some degree or way . . . to have a more or less direct bearing or effect," and while not contemplating conjecture, "has a tendency to prove the averments in the indictment."  *Holladay v. State,* 709 S.W.2d 194, 198 (Tex. Crim. App. 1986), *quoting Boone v. State,* 235 S.W. 580 (Tex. Crim. App. 1922); *In re C.M.G.,* 905 S.W.2d 56, 58 (Tex. App.–Austin 1995, no pet.).  Furthermore, each case must be decided upon its own facts and circumstances.  *Martinez v. State,* 163 S.W.3d 92, 94 (Tex. App.–Amarillo 2005, no pet.).

Appellant's own statement appears in the record before us.  In that statement, he admits to being present at a meeting where 1) the group spoke about the trouble Pool was causing them and 2) one participant brought up the subject of hiring someone to kill Pool for $10,000.  The statement further reveals that appellant traveled to the scene of the murder with Kimberlin, remained abreast of the conduct surrounding the disposition of Pool's body once Pool died, heard one of his compatriots say that if he "'got bust [sic] we

3

were all going down," went to the Home Depot to buy concrete and a trash can for water, and ultimately helped bury Pool's body in cement so it could not be found.  While this alone may not establish appellant's guilt for murder it does tend to connect him to the crime.  *See Rule v. State*, 890 S.W.2d 158, 170 (Tex. App.–Texarkana 1994, pet. ref'd) (finding the evidence sufficient to connect Rule to the murder because he was present at the murder scene, helped dispose of the body and murder weapon and attempted to flee).

*Sufficiency of the Evidence*

Next, appellant challenges the sufficiency of the evidence to sustain his conviction. We overrule this issue as well.

The standards by which we make such determinations are well known.  We refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006) for an explanation of the same.

The medical examiner opined that Pool died from blunt force injuries and asphyxia and that either one alone could have caused Pool's death.  Pool had a skull fracture that included both a calvarial fracture and a basilar fracture which could have resulted from multiple blows.  The basilar fracture would have required a force much stronger than for the simple linear fracture on top of the head.  Furthermore, the injury could have been exacerbated by continued blows to the head.

Appellant argues that he was not a part of the kidnaping and not responsible for the blow to Pool's head from the fireplace poker, therefore leaving suffocation as the only possible means of murder by him.  Nevertheless, it is undisputed that Pool was alive for a considerable length of time after his initial head injury.  Moreover, there was evidence from Bledsoe that appellant struck Pool in the head with pliers when Pool was at the farm.  Since

4

Pool could have died as a result of the trauma to his head alone and there is evidence that appellant struck him in the head at the farm and/or encouraged Kimberlin to do so, a rational jury could have found beyond a reasonable doubt that appellant was guilty of murder and such a finding after a review of the entire record does not undermine our confidence in the verdict. It is true that many of the witnesses gave multiple statements to police and lied in some of those statements. However, it was for the jury to resolve any conflicts in the evidence and determine which witnesses and what parts of their stories to believe. Simply put, the evidence is legally and factually sufficient to support the conviction.

We overrule appellant's issues and affirm the judgment of the trial court.


Brian Quinn
Chief Justice

Do not publish.

5