Affirmed and Memorandum Opinion filed August 28, 2008








Affirmed and Memorandum Opinion filed August 28, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00578-CR

____________

 

ROBERT EARL PARKER, Parker

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 262nd
District Court

Harris County, Texas

Trial Court Cause No. 1090016

 



 

M E M O R A N D U M   O P I N I O N

Robert Earl Parker was convicted of murder and sentenced to
confinement for 99 years in the Institutional Division of the Texas Department
of Criminal Justice.  Parker challenges his conviction, asserting that the evidence
was legally and factually insufficient to support the verdict.  We affirm.








I.  Factual and Procedural Background

On the evening of July 26, 2004, Houston Police Department
officer Joseph Rothman responded to a call about a residential shooting.  When
he arrived at the scene, emergency medical personnel were actively treating a
man inside the home, later identified as Richard Lee.  They were unable to
revive Lee.  Officer Rothman secured the scene, and later found another man,
Birshal Mitchell, in a back bedroom.  Mitchell had a gunshot wound to his
shoulder.  Officer Rothman found no weapons in the house, but did find illegal
drugs.  He also noticed a suspicious van parked across the street from Lee=s home.  Officer
Rothman eventually searched the van, finding 15 pounds of marijuana, several
bottles of codeine syrup, more than 500 ecstacy tablets and a semi-automatic
pistol.  The pistol found in the van was not warm and did not appear to have
been fired recently.  

Birshal Mitchell, a friend of Lee=s, testified that
while in the back bedroom where the officer found him, he heard a knock on the
door.  He heard Lee answer the door, but  Mitchell could not understand the
conversation between Lee and the visitor.  At some point during this
conversation, Mitchell went from the back bedroom to the front room.  Mitchell
testified that Lee=s front door was open, but the burglar-bar
door was closed during the conversation.  Mitchell was not able to identify
Parker as the person at the door.  As Mitchell attempted to return to the
bedroom, he heard a shot and felt a blow to his shoulder.  Additional shots
followed as he ran back towards the bedroom.  While laying down on the bedroom
floor with his feet pressed up against the closed door, Mitchell called 9-1-1
using his cellphone.  He remained in the bedroom until police arrived.








A second witness, Damon Hickerson, testified that he was
outside the house during the shooting.  Hickerson claimed to have known Lee
since high school.  Hickerson testified that Lee had previously worked with
Parker in a scheme that involved using counterfeit money to buy drugs, which
they would later sell for profit.  Lee, Parker, and a third person did this
twice in the months preceding the shooting.  Hickerson estimated that they may
have made profits of between $20,000 and $10,000 in these transactions.
Hickerson also described how Lee had sold Asimulated@ or fake drugs for
profit.   Hickerson further testified that Parker had complained to him that he
did not get a fair share of the profits from these transactions, and that he
blamed Lee.  Hickerson also suggested that there was tension between Parker and
Lee over a woman. 

On the evening of the shooting, Hickerson drove a white van
to Lee=s house to visit
Lee.  This was the same white van discovered and searched by Officer Rothman. 
Hickerson admitted to possession of the gun, the marijuana, and the ecstasy
pills.   Hickerson testified that, before getting out of the van, he saw Parker
pull up to Lee=s house in a blue Cadillac Escalade; park the vehicle;
and approach the house while holding a firearm.  Hickerson could not tell if
the interior front door was open.  Hickerson testified that he then witnessed
Parker fire his gun into the house about five times, and then run back to his
vehicle before driving away.  Hickerson said that, since he didn=t think that Lee
was home during the shooting, he left to check for Lee at Lee=s grandmother=s house down the
street.  After finding that Lee was not there, Hickerson returned to Lee=s house, where
another individual B AE@ B had arrived and
parked out front.  E did not see or hear the shooting and thought that Lee was
in the back of the house, out of earshot from the front door.  Hickerson
testified that, despite the fact that the door was open, he could not see into
the house because the lights were out.  When the emergency medical personnel
arrived, Hickerson used his key to let them into the house.  Knowing that there
were warrants out for his arrest, Hickerson left the scene, driven by E=s girlfriend,
leaving the van behind.  Hickerson testified that he did not provide the tip
that led the police to Parker.  Finally, Hickerson described that he later
spoke with Parker on the phone and felt threatened by him. 








Hickerson admitted to having two felony warrants
outstanding when the shooting occurred; at the time of the trial, he was
serving a 17-year sentence.  Hickerson said that, after the trial, the
prosecutor and his lawyer would ask that his sentence be lowered based on his
cooperation in this case.  

Lee=s mother testified that she and her
boyfriend had visited Lee in his home on the day before he was killed.  When
she arrived, Parker answered the door and then went to sit on Lee=s couch.  Lee=s mother described
Lee as frantic, scared, and upset.  She testified that Lee told her he was
unable to get Parker to leave the house.  When Lee eventually demanded that
Parker leave, Parker went outside and sat on a bench on the patio.  Lee=s mother then
observed that Parker had a gun.  Lee=s mother testified
that she told Lee about Parker=s gun, and that Lee then asked her
boyfriend to retrieve Lee=s gun from his car.  The boyfriend then
brought the gun to Lee, and Lee again asked Parker to leave.  Lee=s mother testified
that Parker soon left, but before driving away said: AI=m going to kill
you nigga.@ Lee=s mother admitted that Parker=s threatening
statement to her son did not appear in a sworn statement she gave the police in
2006.

Additional testimony was given by two men that Parker met
while incarcerated.  Makeba Thomas had met Parker several years before at the
Harris County Boot Camp.  Parker spoke to Thomas about the Lee shooting while
the two were housed at the Federal Detention Center in Houston during December
of 2004.  According to Thomas, Parker told him about a robbery that Parker had
committed with two others, and that Parker Adidn=t get what he
supposed to have got off of it.@  Parker told Thomas that he went to ABig Richard=s mother=s house@ and Athey got into an
argument.@  Parker also told Thomas that he later returned after
the argument and Ashot him through the door.@  

Thomas testified that he was cooperating in this case to
reduce his current sentence, despite having received threats.  On
cross-examination, Thomas admitted that he had discussed the shooting with
Hickerson, although Hickerson previously stated that he did not know Thomas. 
There was also some dispute over the dates that Parker and Thomas met while at
the Federal Detention Center.








Witness Maurice York met Parker while both men were
incarcerated in Beaumont.  York testified that, over a game of craps during a
recreation period, Parker told York that Ahim and a couple
guys hit a lick[1],
and they were trying to cut him out on the lick.@  York further
testified that Parker told him he Ablasted the guy
Richard.@  

York=s criminal history involved charges for
possession of dangerous drugs, assault, evading arrest, possession of a
controlled substance, and failure to identify to a peace officer.  York
admitted to testifying in hopes that his sentence would be reduced. 

The defense called only one witness, Thomas McCain, Lee=s neighbor. 
McCain testified that he awoke to the sound of gunshots, and then looked out
his window in the direction of Lee=s house.  McCain
said that he saw a big black or blue car leaving Lee=s house.  While
his testimony wavered, he did testify that the car he saw drive away was not a
Cadillac Escalade.  

A jury convicted Parker of murder and he was sentenced to
99 years confinement.  This appeal timely followed.  

II.  Analysis

A person commits murder if he intentionally or knowingly
causes the death of another individual.  Tex. Penal Code Ann. ' 19.02(b)(1)
(Vernon 1994).  Parker asserts that the evidence is legally and factually
insufficient to support the verdict.[2] 
We disagree. 

 

 








A. 
Legal Sufficiency

When evaluating a legal-sufficiency challenge, we view the
evidence in the light most favorable to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  If any rational trier of fact
could have found the crime=s essential elements beyond a reasonable
doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614
(Tex. Crim. App. 1997). We do not resolve any conflict of fact, weigh any
evidence, or evaluate any witness=s credibility, as
this was the function of the trier of fact.  See Adelman v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992).  The jury may choose to believe or
disbelieve any portion of a witness=s testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced
with conflicting evidence, we presume that the trier of fact resolved conflicts
in the prevailing party=s favor.  Turro v. State, 867
S.W.2d 43, 47 (Tex. Crim. App. 1993).  We may overturn the verdict only if it
is irrational or unsupported by proof beyond a reasonable doubt.  Matson v.
State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  

Two witnesses testified that while Parker was in custody,
he discussed a robbery involving money and drugs.  Parker expressed frustration
about being cut out of some of the profits, and admitted to killing Lee. 
Hickerson testified that he watched Parker approach the house and shoot into
Lee=s front room. 
Mitchell testified that he saw Lee talking with another male on the other side
of the front door right before the shots were fired into the room, hitting both
Mitchell and Lee.  Considering these facts in the light most favorable to the
verdict, a rational trier of fact could have found the essential elements of
murder necessary to convict Parker beyond a reasonable doubt. 

B. 
Factual Sufficiency








When hearing a factual-sufficiency challenge, we view all
the evidence neutrally.  See Cain v. State, 958 S.W.2d 404, 408
(Tex. Crim. App. 1997).  We especially discuss and examine the specific
evidence that the appellant contends undermines the jury=s verdict.  See
Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  We may
set aside the verdict if the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or if the verdict is against the great weight and
preponderance of the evidence.  Watson v. State, 204 S.W.3d 404, 414-15
(Tex. Crim. App. 2006).  We must not, however, intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  See
Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  We
may disagree with the jury=s conclusions; however, we must avoid
substituting our judgment for that of the jury, particularly in matters of credibility. 
See Watson, 204 S.W.2d at 414. 

During the trial, the defense questioned the State=s witnesses about
potential bias.  Hickerson, Thomas, and York may receive reduced sentences for
cooperating in this case.  However, the jury is the ultimate judge of the
credibility of a witness.  Fuentes, 991 S.W.2d at 271.  Further, a
decision is not manifestly unjust merely because the jury resolved conflicting
views of the evidence in favor of the State.  Cain, 958 S.W.2d at 410. 
Considering all of the evidence in a neutral light, the evidence was not so
weak that the verdict is clearly wrong or manifestly unjust.  Therefore, we
conclude that the evidence is factually sufficient to support the jury=s verdict.  

Based on the foregoing, we affirm the judgment of the trial
court.

 

 

/s/      Jeff Brown

Justice

 

Judgment rendered and Memorandum
Opinion filed August 28, 2008.

Panel consists of Justices Yates,
Anderson, and Brown.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  A Alick@ is street slang for a robbery.





[2]  Parker provides the governing legal principles;
however, he fails to apply the principles to the facts of this case.  Instead,
he makes broad assertions that evidence is legally and factually insufficient
without explaining how or why the evidence is insufficient.  Assuming that this
satisfies the minimum requirements to present an issue on appeal, we address
both issues.